[Sac. No. 3138. In Bank.—June 7, 1921.]

In the Matter of the Estate of LYDIA M. WATTS, Deceased.

[1] ESTATES OF DECEASED PERSONS—RESIDUARY CLAUSE OF WILL—MEANING OF DEVISE TO HEIRS—DECLARATIONS OF TESTATRIX INADMISSIBLE.—In a proceeding for partial distribution of an estate under a will giving the residue "to my heirs," evidence of declarations made by the testatrix at the time the will was drawn to show that by the quoted words she intended to refer only to her own kin was properly excluded.

[2] ID.—ADMISSIBILITY OF DECLARATIONS — LATENT AMBIGUITY. — In view of sections 1318 and 1340 of the Civil Code, evidence of oral declarations to aid in the interpretation of a will cannot be given, except in cases of latent ambiguity.

[3] ID.—INTENT—INADMISSIBILITY OF DECLARATIONS.—When uncertainty or imperfect description appears in a will, oral declarations of the testatrix are not admissible to show her intent with respect thereto.

[4] ID.—LATENT AMBIGUITY—INSUFFICIENCY OF EVIDENCE.—In a proceeding for partial distribution of an estate under a will giving the residue "to my heirs," a latent ambiguity was not shown from the facts that the property to be distributed was community property of the marriage between the testatrix and her predeceased husband, that neither of them left children or lineal descendants surviving, and that both left collateral relatives entitled to inherit from them, as such, respectively.

1. Evidence of declarations of testator to identify legatee or devisee, notes, 107 Am. St. Rep. 459; 47 L. R. A. (N. S.) 533.

[5] ID.—FAMILY ALLOWANCE—USE DURING LIFETIME OF WIDOW—
PRESUMPTION.—A family allowance received by a widow for her
support during the progress of the settlement of her husband's
estate will be presumed, in the absence of evidence to the con-
trary, to have been all used by her for the purpose for which
she received it and that none of it remained as part of her
estate at her death.

[6] ID.—SUCCESSION TO COMMUNITY PROPERTY OF WIDOW AND PRE-
DECEASED SPOUSE—RECEIPT OF LESS THAN WHOLE FROM HUS-
BAND'S ESTATE—COURSE OF DESCENT UNCHANGED.—In view of
the plain declaration of subdivision 8 of section 1386 of the Civil
Code as to the manner of succession upon the death of a widow
to property which was the common property of herself and her
predeceased spouse, the fact that the widow received only three-
fourths of the property at the distribution of her husband's estate
did not make such three-fourths anything else than common prop-
erty of the previous community, or make the course of descent
different from that specified in such subdivision.

APPEAL from a decree of partial distribution of the
Superior Court of Butte County. H. D. Gregory, Judge.
Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin and D. Hadsell for Appellants.

Bond & Deirup and Samuel J. Nunn for Respondents.

SHAW, J.—This is an appeal from a decree of partial
distribution.

The decedent was the widow of one Nelson Watts, who
died intestate in June, 1900, leaving a large estate consist-
ing entirely of community property. There were no chil-
dren of the marriage, and neither husband nor wife left
issue surviving. Upon the final settlement of the estate of
Nelson Watts, three-fourths of the property remaining for
distribution was assigned to Lydia M. Watts as his widow,
and one-fourth thereof to A. V. Watts and others as
brothers and sisters of Nelson Watts, or their descendants.
Lydia M. Watts died on August 5, 1916. By her will she
gave the residue of her property by the following clause:
"I hereby give, devise and bequeath all the rest, residue and
remainder of my estate wheresoever situate *to my heirs* and

to be distributed to them according to law." Her estate was appraised at $356,344.65. Ella Gray and the other persons who were the next of kin of Lydia M. Watts petitioned the court for partial distribution of eighty-one thousand dollars of the estate. The superior court decided that the words "my heirs" in the will meant the next of kin of Lydia M. Watts alone and did not include the next of kin of Nelson Watts. On appeal to the supreme court the order was reversed and it was held that the effect of the above-quoted provision was to give the property to the persons who would have inherited it under the statute of descent, had she died intestate, and, therefore, that it should go in equal parts, one-half to the relatives of Nelson Watts and one-half to the relatives of Lydia M. Watts, as provided in subdivision 8 of section 1386 of the Civil Code. The decision was made on September 24, 1918. (*Estate of Watts,* 179 Cal. 20, [175 Pac. 415].)

After that decision each of the contending sets of claimants filed a petition for distribution of a part of the estate. The Nelson Watts claimants asked distribution to them of one-half of thirty thousand dollars in money and one-half of 3,960 acres of land. The petition of the Lydia M. Watts claimants asked distribution to themselves of forty-five thousand dollars in money out of the estate, claiming to be entitled to it all. After the filing of these petitions a large part of the real property was sold and amended petitions were filed asking distribution of the proceeds, with the other money on hand, and of the remaining land. After a trial of these conflicting claims the court below made findings declaring that money on hand, amounting to $267,506.56, belonging to the estate and something over one thousand six hundred acres of land remaining unsold was ready for distribution, and thereupon it entered a decree sustaining the contention of the Nelson Watts claimants and distributing said property accordingly, one-half to each set of claimants, setting out particularly the share of each person interested. From this decree the Lydia M. Watts claimants appeal.

1. Upon the trial the appellants offered to prove certain declarations made by the testatrix, Lydia M. Watts, at the time the will was drawn to the person who drew it, concerning her intention. This evidence was offered to show that by the words "to my heirs" in the above residuary clause

she intended to refer only to her own kin; that her desire was for them to have the entire residue. This evidence was excluded and the ruling is assigned as error.

[1] We think the ruling was correct. Section 1318 of the Civil Code provides as follows: "In case of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." And section 1340 provides that, "When, applying a will, it is found that there is an imperfect description, or that no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence; but evidence of the declarations of the testator as to his intentions cannot be received." [2, 3] It will be seen from these provisions, first, that evidence of oral declarations to aid in the interpretation of a will cannot be given at all except in cases of latent ambiguity, which does not appear here, and, second, that even when uncertainty or imperfect description so appears, oral declarations of the testatrix are not admissible to show her intent with respect thereto. This is the uniform rule of this court. (*Estate of Walkerly*, 108 Cal. 627, [149 Am. St. Rep. 97, 41 Pac. 772]; *Estate of Young*, 123 Cal. 344, [55 Pac. 1011]; *Estate of Tompkins*, 132 Cal. 176, [64 Pac. 268]; *Estate of Blake*, 157 Cal. 469, [108 Pac. 287]; *Estate of Willson*, 171 Cal. 456, [153 Pac. 927].) The same rule is stated by all the text-writers. (1 Redfield on Wills, p. 496; 1 Jarman on Wills, 6th ed., top p. 412, *p. 379; Wharton on Evidence, sec. 992; 4 Wigmore on Evidence, sec. 2471; 3 Jones on Evidence, sec. 480.) Furthermore, the decision on the former appeal is to the same effect with regard to the meaning of these particular words, the court saying (179 Cal. 23, [175 Pac. 417]): "We must determine her intent from the language of her will, and where that language is clear and unambiguous it 'must be interpreted according to its ordinary meaning and legal import and the intention of the testator ascertained thereby.'" The decision also establishes the proposition that in view of the express provisions of the Civil Code, in section 1327, relating to technical words in a will, and in section 1334, defining the meaning of the word "heirs" when used in a

will, there is no uncertainty on that subject arising on the face of this will. The rule excluding oral declarations is, therefore, strictly applicable to this case and the court properly excluded the evidence thereof.

It is suggested that the decision of the supreme court on the former appeal is not applicable to the question of the admissibility of evidence of oral declarations, because at the trial there under review no such evidence was offered; also, that the proof of the existence of the two opposing sets of claimants showed a latent ambiguity, upon which evidence of extrinsic facts was admissible. The code sections quoted and the decisions we have cited dispose of the first suggested point without aid from our previous decision. Upon the former trial the extrinsic facts which it is now claimed produce a latent ambiguity were fully shown, as appears in the previous opinion. [4] These facts were that the property to be distributed was community property of the marriage between Lydia M. Watts and Nelson Watts; that neither of them left children or lineal descendants surviving, and that both left collateral relatives entitled to inherit from them as such, respectively. To that extent the former decision is strictly applicable here and is decisive to the effect that no latent ambiguity arose from the existence of said facts.

2. Upon the hearing in the trial court of the petition for partial distribution under review on the former appeal, the parties filed a stipulation to the effect that all the property of which Nelson Watts died seised was community property of said Nelson Watts and Lydia M. Watts, his wife; that upon the final settlement of his estate on July 5, 1901, three-fourths thereof was distributed to her and one-fourth to his relatives, and that all the property of which she died seised is property so distributed to her as aforesaid and the rents, issues, and profits thereof, and that said stipulation might be used upon any subsequent petition for distribution of said estate or any part thereof.

Upon the hearing of the petitions now under review the appellants offered to prove that Lydia M. Watts, as administratrix of her husband's estate, had, on the final settlement thereof, received from the estate four thousand one hundred dollars as commissions for her services; that during the administration she received from the estate a family allowance

amounting to about $4,550; that within two months after the final settlement of said estate she purchased from the next of kin of Nelson Watts their one-fourth interest in certain mortgages and notes belonging to said estate which had been distributed to them by the decree of distribution, and that during the administration of said estate there was set apart to her as a homestead two lots in Chico, which she still owned at her death. Objections to said offer on the ground that the appellants were bound by said stipulation were sustained by the court. Thereupon appellants, upon notice and affidavits, moved the court to be relieved from the effect of such stipulation, on the ground that the same was made through inadvertence and in ignorance of the facts which they then offered to prove. Counter-affidavits were filed and the court denied the motion.

The showing of inadvertence and excusable neglect in signing the stipulation was not strong. But conceding that it was sufficient in that respect, we think the motion was properly denied for other reasons.

The two petitions then on hearing were each for partial distribution and asked only for distribution of a specific sum of money and specific parcels of land. The appellants did not even attempt to allege or to show that the money received for commissions and family allowance, or the proceeds thereof, constituted any part of the money of which distribution was asked. The family allowance was received by her in 1900 and 1901, fifteen years before her death. [5] As the statute allows it for her support during the progress of the settlement of her husband's estate on the ground that it is necessary for that purpose (Code Civ. Proc., secs. 1464, 1466), it is to be presumed, in the absence of evidence to the contrary, that it was all used by her for the purpose for which she received it and that none of it remained as part of her estate at her death in 1916. The lots set off to her as a homestead are not included in the real property of which distribution was asked or made and they remain on hand as part of her undistributed estate. The question whether or not those lots are now to be classed as her separate estate is not now involved and may not appropriately be decided. The evidence offered in regard to the purchase of the one-fourth interest of the relatives of Nelson Watts in the mortgage notes shows that on August 2,

1901, she did buy said interest and paid therefor the sum of $12,891. Appellants claim that this alone raised a presumption that the payments were made to them by her out of her separate estate, and that this presumption is so conclusive that the court was without discretion to refuse to set aside the stipulation if it was inadvertently made in ignorance of that fact. There was, however, before the court at that time many other facts which almost conclusively rebut any presumption of that kind. The stipulation was to the effect that there was no separate property of either husband or wife in existence at the time of the death of Nelson Watts. There was no attempt to show that his widow had engaged in any independent business of her own after his death, or had received any property as her separate estate, except the family allowance and commissions. The inference is almost conclusive that she had no funds with which to buy said mortgage notes except what she received from the estate of her husband, aside from the commissions. It appeared that the annual rents of said estate at the time of his death were from fifteen thousand dollars to twenty thousand dollars. Of this she would be entitled to three-fourths. It also appears that he left notes amounting to over sixty thousand dollars in value, of which the interest she so purchased was a part. Furthermore, there is some evidence indicating that the subsequent purchase of these notes was in reality a partition thereof. The assignments thereof were all dated August 2, 1901, and were all recorded on September 24, 1901. On the same day there were recorded assignments by said widow to the next of kin of Nelson Watts of her three-fourths interest in certain other mortgage notes belonging to said estate, which assignments were dated July 24, 1901, in consideration of which she received from them $1,898.43. It may further be observed that if they transferred their interest in notes not secured by mortgage, as was not improbable, in the same transaction, the assignment of the notes could not be matters of record. There was no attempt to prove that the commissions were used to pay for the notes purchased by her from the other heirs. All the circumstances taken together furnish almost conclusive proof that instead of there being a purchase there was a mere partition of their interests in the notes. In any event there was ample proof to show that whatever

money she paid to them was more probably paid out of the
proceeds of the community estate than out of her separate
property, inasmuch as it is not claimed that she had sepa-
rate property before the death of her husband. For these
reasons we think that on the merits of the proposition the
court was justified in refusing to enter upon the inquiry
which must inevitably have resulted in proving that the
stipulation so far as it affected the case then before the
court was true.

[6] 3. The remaining point of the appellants is stated in
their opening brief as follows: Since it appears that "Lydia
M. Watts received only three-fourths of the common prop-
erty at the time of the distribution of the estate of her pre-
deceased spouse Nelson Watts, the other one-fourth going
to the blood relatives, then in any event appellants are en-
titled to one-half of the common property which would be
two-thirds of the three-fourths distributed to her. There-
fore, appellants are clearly entitled to two-thirds of the
estate distributed instead of the one-half which the lower
court awarded." We are unable to follow the somewhat
abstruse reasoning by which this conclusion is reached. The
code plainly declares that upon the death of a widow leav-
ing no issue and leaving estate which was common property
of herself and her deceased spouse, while such spouse was
living, if there were no children of the former spouse nor
any father or mother of either living at the time of the
widow's death, such estate shall go in equal shares, one-half
"to the brothers and sisters of such decedent and to the
descendants of any deceased brother or sister by right of
representation, and the other half goes . . . to the brothers
and sisters of such deceased spouse and to the descendants
of any deceased brother or sister by right of representa-
tion." (Civ. Code, sec. 1386, subd. 8.) By the will of
Lydia M. Watts, as has been seen, her property was to go
to her heirs. In the former decision in this estate it was
expressly held that this meant that it should go to her heirs
as they were defined in subdivision 8 aforesaid in the same
manner as if she had died intestate. We have no disposi-
tion now to revise that opinion, and hold that it goes in
some other proportions, especially in view of the precise
language of the code just quoted. We perceive no ground
upon which to found the conclusion that the fact that she

received only three-fourths of the common property at the distribution of her husband's estate made that three-fourths anything else than common property of the previous community, or pointed to a course of descent different from that specified in subdivision 8 aforesaid. The point appears to be without merit in itself and no authority is cited which approaches to a support of it.

The decree of distribution is affirmed.

Olney, J., Wilbur, J., Lennon, J., Sloane, J., Lawlor, J., and Angellotti, C. J., concurred.