[Civ. No. 72. Fifth Dist. Mar. 20, 1962.]

Estate of MAUD M. LYON, Deceased. HARRY FITZ-GERALD et al., Petitioners and Appellants, v. ALLAN G. LYON et al., Claimants and Respondents.

Mazzera, Snyder & DeMartini and J. Calvert Snyder for Petitioners and Appellants.

T. R. Vilas for Claimants and Respondents.

STONE, J.—This is an appeal from a decree determining interests in estate. Maud M. Lyon died testate on October 3, 1959. On August 7, 1959, she executed a will which had been prepared by her attorney at her request. The will reads as follows:

"KNOW ALL MEN BY THESE PRESENTS: That I, MAUD M. LYON, a resident of the County of Tuolumne, State of California, of lawful age, do hereby make, publish and declare this to be my Last Will and Testament and I will and direct that my property shall vest as follows:

"FIRST: I hereby revoke any and all former Wills or Codicils to Wills heretofore made by me.

"SECOND: I hereby direct that all my just debts and funeral expenses be paid first.

"THIRD: All of the rest, residue and remainder of my property of whatever kind or character and wheresoever situate, I hereby give, devise and bequeath to my nieces, MARJORIE STARLING, VERNICE MARTENS, and my nephews, ALAN G. LYON, HARRY FITZGERALD, EBERHARDT FITZGERALD and RALPH FITZGERALD, share and share alike.

"FOURTH: I hereby intentionally omit to provide and make no provision for any other relative or relatives and in the event that any person shall appear and contest this my Last Will and Testament and establish any right to claim inheritance from me, I hereby give, devise and bequeath such person or persons the sum of One Dollar ($1.00) as such person's or persons' sole share in my estate.

"FIFTH: I hereby nominate, constitute and appoint BANK OF AMERICA NT&SA as the Executor of this my Last Will and Testament.

"WITNESS my hand this 7th day of August, 1959."

One week later, August 14, 1959, Mrs. Lyon gave her attorney instructions for the preparation of another will, but the second will was never drafted. On August 18, 1959, Mrs. Lyon wrote a codicil to her will, placed it in an envelope and had it delivered to her attorney. The codicil reads as follows:

"I want this attached to my last will and testament recently made out by James Hardin of Sonora after any & all / bills [above "all / bills": my just] are pd I want and my funeral expenses / ~~also~~ a coping of cement & a small marker or head stone placed on my daughters also my grave

·Jim Hardin knows I am owed $16,000.00 by Geo. D. Rand, money I loan Geo. D. Rand to buy their pd up Sonora home I also have (2) two $1000 New England Mutual Life Insur-
in the company
ance policys plus the or some five yr distributions / I took these policies out for my late daughter Gladys May Lyon Rand in 1906 after the above requests are made any money left over are made I want equally divided by among Alan G. Lyon, Mildred D. Lyon, Vernice Martens, Marjorie Starling Any person trying to break this will I leave the sum of one Dollar ($1.00)''

The will and the codicil were admitted to probate. Appellants filed a petition to determine heirship, contending that the words of the codicil, ''after the above requests are made any money left over I want equally divided among Alan G. Lyon, Mildred D. Lyon, Vernice Martens, Marjorie Starling'' were intended to apply only to the assets of the testatrix referred to in the codicil, namely, the $16,000 owed by George D. Rand and the proceeds from the two insurance policies. Respondents contend that the word ''money'' refers to all of the testatrix's estate except her real property, and that it was the intent of the testatrix to revoke paragraph Third of her will; in other words, that the language evidences an intent to create a new residuary clause. The trial court agreed with respondents and found that by use of the word ''money'' in her codicil, testatrix referred to all of her estate except her real property. Thus the corporate stocks, savings accounts, commercial account and United States Government Bonds were ordered distributed by the codicil, as well as the Rand note and the two insurance policies. Appellants, who are residuary legatees under paragraph Third of the will, have appealed.

The question of what testatrix meant by the word ''money'' is, of course, the key to the case. Since an uncertainty appears upon the face of the codicil, the court properly admitted extrinsic evidence to aid in resolving the ambiguity, as provided by Probate Code, section 105. That section reads:

''When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application

of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations.''

At the time extrinsic evidence was offered, counsel for appellants directed the attention of the court to the provision in Probate Code, section 105, which excludes from evidence of the circumstances under which the will was made, the oral declarations of intention by the testatrix. (*Estate of Watts,* 186 Cal. 102, 105 [198 P. 1036]; *O'Farrell* v. *American Trust Co.,* 149 Cal.App.2d 691, 697 [309 P.2d 60].) Recognizing that the case was being tried without a jury, court and counsel adopted a rather unusual procedure. The court advised counsel that it would receive all evidence offered relating to the circumstances surrounding the making of the will of August 7 and the codicil of August 18, together with instructions given by testatrix on August 14 for a will which was never prepared; however, the evidence was to be admitted upon the condition that only admissible evidence would be considered. That is, evidence rendered inadmissible by reason of Probate Code, section 105, although received, would be disregarded by the court. This procedure apparently met with the approval of all counsel, as no objection was voiced, and the attorney for appellants withdrew his motion to strike in deference to the court's declaration.

In his memorandum opinion, the trial judge recited that he considered no testimony purporting to relate oral declarations of the testatrix concerning the will of August 7 or the codicil of August 18. Undoubtedly this expediency facilitated the trial of the case, but it is difficult to review the record and distinguish the inadmissible testimony from the admissible without benefit of objection or motion to strike. Disregarding the inadmissible, the most significant evidence remaining in the record is the testimony of the attorney who represented Mrs. Lyon, the testatrix. It appears that Mrs. Lyon had loaned $16,000 to her son-in-law, a Mr. Rand, and taken back a note secured by deed of trust; further, that she owned shares of stock and bank accounts jointly with her daughter, Mrs. Rand. The daughter preceded Mrs. Lyon in death, and at the time the will and the codicil were executed, a dispute was in progress between Mr. Rand and Mrs. Lyon concerning the nature and extent of this property. The attorney stated that he consulted with Mrs. Lyon concerning the property and

conducted settlement negotiations on her behalf. He testified as follows:

"THE COURT: How did she refer to this $16,000.00 deed of trust, in what terms?

"A. She did refer to it as cash, and also as money. At the time of the final settlement in the way of negotiations between the estate of Gladys Rand and Mrs. Lyon, the settlement was predicated on a search that had been made by accountants trying to allocate and trying to separate funds and community funds of Mrs. Rand, and separate funds of Mrs. Lyon's, to allocate the division of the bank accounts. At the time of the final settlement, the only way I recall how she expressed it is this: 'If I get my half of the shares and the accounts, and my money or cash,' referring to the $16,000.00—'I will be satisfied with the settlement.' Now, that is the only way I know she referred to it."

The foregoing testimony contradicts respondents' contention that Mrs. Lyon customarily referred to all of her personal property, including shares of stock, bank accounts, as well as the Rand note and deed of trust, as money. In asserting her interest in such property, testatrix referred to her shares of stock as shares, to her bank accounts as accounts, and to the $16,000 as money or cash. It also discloses that Mrs. Lyon was well aware of the nature of the property constituting her estate.

 Construing the word "money" as referring to the Rand note and the two policies specifically mentioned in the codicil, lends congruity to the document. Testatrix first ordered her "just bills and my funeral expenses" paid, then added the "request" for a coping of cement and a small marker for her daughter's grave and for her own. Next she recited that George Rand owed her $16,000 and that she owned two $1,000 insurance policies on her daughter's life. This recital was followed by a bequest that the money remaining after payment of the enumerated expenses be distributed to the four persons named. Any other interpretation disregards mention in the codicil of the Rand note and the two insurance policies and renders reference to these two sources of money superfluous and absolutely meaningless. Such other interpretation would therefore violate Probate Code, section 102, which provides, in part:

"The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; . . ."

Lastly, paragraph THIRD of the formal will dated August 7 contains a clear and specific residuary clause. Probate Code, section 104, provides:

"A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will."

The language of the codicil does not express a clear and distinct intent to revoke paragraph THIRD of the will. On the contrary, testatrix specifically identified two sources of money, the Rand loan and the insurance policies, then immediately and without so much as a comma intervening, provided "after the above requests are made any money left over I want equally divided among. . . ."

The order is reversed.

Conley, P. J., and Brown, J., concurred.