243 Cal.App.2d 102 (1966)
Estate of SAMUEL R. NEIDER, Deceased. PACIFIC NATIONAL BANK OF SAN FRANCISCO, as Executor, etc., et al., Petitioners and Respondents,
v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Objector and Appellant.
Civ. No. 22896. 
California Court of Appeals. First Dist., Div. Two. 
June 23, 1966.
 Thomas J. Cunningham, John E. Landon, Milton H. Gordon and Jeffrey W. Horner for Objector and Appellant.
 Koford, McLeod & Koford, George M. McLeod, Myers, Praetzel & Pierce, Robert P. Praetzel and Orlando J. Bowman for Petitioners and Respondents.
 TAYLOR, J.
 The main question presented by this appeal from a judgment determining heirship in the estate of S. Neider is whether the probate court correctly decided that the testator's direction for an equal division of the residue constitutes a clear, unambiguous direction against proration of the federal estate tax within the meaning of section 970 of the Probate Code and that the specific legatee was exonerated from the burden of the tax. Appellant, The Regents of the University of California (hereafter University) argues that its 50 percent share of the residue is to be computed after proration of the tax as to all legatees. Respondents are: Pacific National Bank (hereafter Bank), executor of the estate; William R. Dobson, trustee of the E & C Cute Trust, the specific legatee (hereafter Dobson); and the other general legatees (hereafter Neider).
 The facts are not in dispute. The testator, a resident of San Francisco, died on January 11, 1962. His witnessed will, dated April 16, 1956, and a holographic codicil, dated December 4, 1960, were admitted to probate, and the Bank appointed as executor in 1962. *105
 The witnessed will merely bequeathed the entire estate to the Bank as trustee to divide into as many shares as there are beneficiaries named by the codicil and in such proportion as designated by codicil, and directed the trustee to distribute to each beneficiary one-half of the principal of his or her share of the trust estate ten years after the date of the death of the testator and the balance at the end of twenty years after the testator's death. The codicil provided for the transfer of the testator's interest in certain Oakland properties to the Cute Trust and the remainder distributed as follows: 50 percent to the University, and 50 percent to certain designated general legatees and charities. [fn. 1] Neither the will nor the codicil contained any language indicating how any tax burdens were to be allocated. The gross estate was appraised in excess of 4 1/2 million dollars; the properties bequeathed to the Cute Trust, in excess of $200,000. [fn. 2]
 The trial court found that the devise of the Oakland properties to the Cute Trust was a specific devise and legacy within *106 the meaning of section 750 of the Probate Code, [fn. 3] that the property distributed to the Cute Trust was not to be charged with any portion of the estate tax and that the will contained a specific direction against proration. In reaching its conclusion that the testator had provided a clear and unambiguous direction against proration of the federal estate tax, the trial court relied on the third paragraph of the codicil which provides: "the remainder after the above is taken from my holdings" shall be distributed in two equal parts.
 The proration statute (Prob. Code, 970-977) provides for equitable proration except in a case where the testator "otherwise directs" in his will. The chief question here presented is whether, by using the above quoted language, the testator has otherwise directed. Before attempting to interpret the will, a brief reference should be made to the applicable law.
 Section 970 provides that estate taxes shall be prorated over the "gross" estate, that is, the entire taxable estate, unless the testator "otherwise directs" in his will, or trust agreement. The succeeding sections provide for the method of proration, for certain allowances and exemptions, that the taxes shall be paid by the executor or administrator, and that the executor or administrator may recover his portion of the taxes from the possessor of nonprobate property subject to tax. Section 977 provides: "Except where the context otherwise requires, as used in this article:"
 "(a) 'Person interested in the estate' means any person who receives or is the beneficiary of any property transferred pursuant to a transfer which is subject to a tax imposed by any Federal estate tax law, now existing or hereafter enacted."
 "(b) 'Gross estate' or 'estate' means all property included for Federal estate tax purposes in determining the Federal estate tax pursuant to the Federal estate tax law."
 Prior to 1943, in California, the federal estate tax was a charge solely upon the probate estate, and was not apportioned *107 on the entire gross taxable estate. In the absence of a proration statute, this was the general rule in the various states. But many states, in the belief that every portion of the estate that created the tax should bear its fair share of the tax burden, passed proration statutes. In 1943, California, modeling its statute on that of New York, adopted sections 970-977 of the Probate Code (Estate of Armstrong, 56 Cal.2d 796, 800 [17 Cal.Rptr. 138, 366 P.2d 490]). [1] "The object sought to be accomplished by the proration statutes is the equitable allocation of the burden of the tax among those actually affected by that burden" (Estate of Buckhantz, 120 Cal.App.2d 92, 98-99 [260 P.2d 794]).
 The same thought was expressed in Estate of Cushing, 113 Cal.App.2d 319, 333 [248 P.2d 482], as follows: "There can be no doubt that the proration statute definitely expresses a policy that the federal estate tax is intended, in the absence of an expression to the contrary, to be levied, for state inheritance tax purposes, in accordance with the benefit that a person interested receives from the estate. ... In other words, the proration statute, in the absence of direction in the will to the contrary, expresses a general state policy directing the executor to pay the federal estate tax and to fix the impact of the tax upon each beneficiary's share of the property that has contributed to the tax." [2] Thus, subject only to the expressed will of the testator to the contrary, it is now part of the fundamental public policy of this state that taxes should be prorated.
 [3] The question here presented is one of law and we must make an independent determination of the meaning of the language used by the testator (Parsons v. Bristol Development Co., 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]). In interpreting wills in this state, certain fundamentals are established by both statutory and decisional law. A will is to be construed according to the intention of the testator (Prob. Code, 101, 163); the words of a will are to receive an interpretation which will give some effect to every expression (Prob. Code, 102) and all parts of a will are to be construed in relation to each other (Prob. Code, 103). [4] The testator's intent is to be sought by looking at the entire will, by examining the language in question and by determining what is meant by the words actually used (Estate of Jones, 55 Cal.2d 531 [11 Cal.Rptr. 574, 360 P.2d 70]; Estate of Armstrong, supra).
 [5a] As indicated above, the words here used, after the *108 devise and bequest of certain properties to the Cute Trust, provide that "the remainder after the above is taken from my holdings shall be distributed" in two equal parts. Respondents, emphasizing the word "after" and the division into two equal parts, contend that this language constitutes a direction by the testator that the federal estate tax not be prorated. [6] The statutory mandate is that the federal estate tax shall be equitably prorated. Proration is the general rule to which an exception is made only where there is a clear and unambiguous direction to the contrary (Estate of Armstrong, supra, p. 802). [5b] The language used by the testator in this case does nothing more than create an ambiguity and ambiguities must be resolved in favor of apportionment (Estate of Armstrong, supra).
 In the cases upon which respondent relies, the testator provided language which clearly reflected on the distribution of the tax burden. Thus, in Estate of Wilson, 154 Cal.App.2d 24 [315 P.2d 451], the will made provision for several specific bequests and directed distribution of the residue in stated proportions among four individuals and a church, but also went on to provide that " 'all inheritance, succession and estate taxes, Federal or State, upon any transfers of property included in my gross estate for the purpose of determining such taxes, ... shall be paid out of my residuary estate.' " In Estate of Anthony, 230 Cal.App.2d 766 [41 Cal.Rptr. 317], the total amount to be received by the legatee under the will was a specified sum, not to exceed a given percentage of the total net value of the estate available for distribution after payment of federal taxes upon or from the estate. In Estate of McAuliffe, 132 Cal.App.2d 476 [282 P.2d 541], the testatrix divided the residue of her estate among charitable and other legatees in specified proportions, but the first article of the will directed that all expenses and taxes were to be paid by the estate and not chargeable to the beneficiaries. The court noted that by placing death taxes in the same category as all expenses and giving a single direction as to the payment and charging all of such items, the testatrix had made clear her intention that proration was not intended. In Estate of Hotaling, 74 Cal.App.2d 898 [170 P.2d 111], the language in the will directed all benefactions be paid and delivered in full and without deduction. The case is further distinguishable as the will was executed prior to the operative date of the proration statute and the court held that the testator was charged with *109 knowledge only of the law as it existed at the time he made his will.
 In support of their contention that the division of the residue into equal shares indicates a clear and unambiguous direction against proration, respondents rely chiefly on Estate of Allen, 125 Cal.App.2d 502 [270 P.2d 510]. In that case, the testatrix went to great pains to offset what she considered to be an injustice to her son by a prior marriage and explained that her second husband had accepted her first son as his son and had orally declared that his stepson was to share equally with his own children in the division of his estate. She then bequeathed to her first son the same number of shares of the capital stock of the Allen Estate Company as were to be distributed by the court in the probate proceedings of her husband's estate to her other two children, and gave the residue of her estate in equal shares to her three children. She also specifically provided that it was her intention that as a result of her will, her first son was to receive exactly the same share and interest in the assets of the estate of her husband as her other children. The court held that this language constituted direction against the apportionment of any part of the federal estate tax to the gift of the family company share to her first son.
 Here, there is no language indicating any such intent regarding exact equality of treatment of the residuary beneficiaries. [7] An equal division of assets does not necessarily mean an equal sharing of the tax burden. For example, if a testator directs that his estate be divided into two equal shares, one of which is bequeathed to a child and the other to a collateral relative, could it be logically contended that the word "equal" also related to the inheritance tax? [8] Likewise, it cannot be argued here that in directing that the residue be equally divided between the University and the other legatees, the testator intended an equal tax burden, as he must be presumed to have known that his gift to the University and other charities would be deducted from the value of his gross estate for estate tax purposes (26 U.S.C.A., 2055).
 Respondents argue that the language directing equal division is a clear, albeit implied, direction against apportionment. This argument is based on the following chain of reasoning and construction of the will: The executor has the duty of paying taxes (Prob. Code, 974); the residue is bequeathed to the trustees for division into two equal parts; the executor, in the normal chronology of estate administration, turns over the *110 residue to the trustees for division after payment of taxes; the trustees, therefore, are to divide the residue into two equal portions when they receive it from the executor after payment of taxes.
 But there is no provision in the will requiring that the federal estate tax is to be treated as an administration expense and thus initially subtracted. Estate of Cushing, supra, at p. 333, held that the proration statute compels the executor not only to pay the death duty before distribution but also to fix the impact of the tax on each beneficiary's share of the property that has contributed to the tax, with the result that in the instant case, equitable proration is an accomplished fact by the time the assets reach the hands of the trustees.
 The will contains no clear direction against apportionment. Estate of Buckhantz, supra, is controlling. There, as here, the will contained no provision relative to the federal estate tax, and directed the trustee to divide and distribute the residue of the estate in three equal parts to the widow (who was entitled to a community property exemption), to a sister of the decedent, and to the sister's sons. The court held that the latter provision was not a command against equitable proration within the residue. Respondents' argument implies that there is one rule for a surviving spouse (Buckhantz) and another for charitable institutions and other residuary legatees. No such distinction is found in the proration statute. We are asked to find a direction against apportionment to the detriment of the charitable legatees and the entire estate, as under the respondents' approach, the estate tax burden is increased.
 In the absence of any language indicating the testator's intent as to the allocation of the tax burden or a specific direction for exact ultimate equality of treatment among all beneficiaries, we cannot find here the clear, unambiguous direction against the proration the law requires (Estate of Armstrong, supra). A simple direction to an executor or trustee to divide the residue of an estate in stated proportions among taxable and nontaxable transferees is not a sufficient direction against the apportionment of the federal estate tax prescribed by the statute. The courts in other jurisdictions have reached the same conclusion in similar situations. In both In re Shubert's Will (1962) 225 N.Y.S.2d 13 [10 N.Y.2d 461, 180 N.E.2d 410], [fn. 4] and In re Wahr's Estate (1952) 370 Pa. 382 [88 A.2d *111 417], the will directed distribution of the residue in equal proportions to certain individuals and to charities but made no allocations of the tax burdens. Both cases held that since the testator did not expressly make a direction against apportionment within the residue, he must be presumed to have intended gross equality or equality prior to taxes rather than net equality or equality after the tax impact.
 [9] We also conclude that the trial court erred in its finding that the Cute Trust should be exonerated from bearing its share of the federal estate tax. [fn. 5] Here, likewise, the testator provided no language indicative of his intent. The devise and bequest to the Cute Trust is not exempt from proration merely by virtue of its specificity (Estate of McAuliffe, 132 Cal.App.2d 476, 480-481 [282 P.2d 541]; Estate of Pearson, 90 Cal.App.2d 436, 439 [203 P.2d 52]). [10] The lien of the federal estate tax attaches to the entire estate as of the date of death (Estate of Pearson, supra, p. 438) and under the controlling federal statute, the testator's interest in the Cute Trust, an inter vivos trust, is a part of his gross estate (Estate of Armstrong, supra, p. 800). Thus, the gift of "all of the testator's interest" in the Oakland properties to the Cute Trust cannot by any stretch of the imagination be converted into a direction against apportionment. The trial court's gratuitous finding on this matter was apparently based on the erroneous assumption that section 750 of the Probate Code exonerated the specific bequest from the apportionment of the federal estate tax in addition to other debts and expenses of administration.
 In view of the above conclusions, the remaining contentions of respondents can be disposed of summarily. We have already indicated that respondents' reliance on the testator's presumed knowledge of section 974 of the Probate Code [fn. 6] is not *112 pertinent here. The further fallacy in their argument is that the testator must be presumed to have knowledge of all of the relevant law, namely, sections 970-977 of the Probate Code, section 2055 of the Internal Revenue Code, as well as the holdings in Estate of Buckhantz, supra, and Estate of Cushing, supra, not just section 974 of the Probate Code. [11] Nor, as the Neider respondents argue, can the fact that the Bank alone was named as executor, while the University, the Bank, the respondent McIntosh were designated as trustees of the residuary trust, amount to a command against statutory apportionment. As indicated above under Buckhantz, supra, such instructions do not constitute a direction against equitable proration and under Cushing, supra, the executor is bound to fix the impact of the federal tax before distribution so that proration is an accomplished fact by the time the assets reach the trustees.
 [12] The Neider respondents' further contention that their annuity will be impaired if their gifts are required to assume the burden of their share of the federal estate tax is not supported by the language of the codicil. It provides that the $50,000 to be paid each year over a 20- year period can be taken out of capital as well as income. Even assuming, arguendo, that the testator miscalculated and that the annuity would be impaired, we do not think that the mere provision for a 20-year annuity from the income or capital of the shopping center can, as a matter of law, be considered a clear and unambiguous direction against proration.
 The judgment is reversed with directions to the trial court to enter judgment in accordance with this opinion. Appellant is awarded its costs.
 Shoemaker, P. J., and Agee, J., concurred.
 "All my right title & interest in 75 yr lease on property located corner Bdw. & Grand Ave Oakland, also Hof Brau Corporation, also furniture & equipment installed on premises, also Travelodge lease and land at 1st Ave & E 12th St. all to be transferred to E & C Cute trust of which I am trustee upon my death I appoint Paul Anderson Mills Bldg as trustee."
 "The remainder after the above is taken from my holdings shall be distributed as follows."
 "Fifty (50%) percent to University of California to be used solely for research of Heart Disease."
 "I wish Strawberry Point be developed orderly and fully and non income producing sold when necessary but Shopping Center being held for income only. I would expect competent help from their real estate dept."
 "The minimum income of 50,000 per yr shall be paid to the following persons, out of income or capital of the remaining 50%"
 Tabular Material Omitted
 "The remaining 30% I want given to personal charities. they must be tax free I want Lucille Sanderson to distribute this, and upon her death the Salvation Army will continue this. 500.00 plus expenses shall be paid either of the above for finding worthy cases."
 "This is my last codicil to my Will."
NOTES
[fn. 1] 1. "I wish to add to my trustees Wm. McIntosh and University of California all as co trustees in event of my death the three trustees are ordered to divide under Will prepared by attorney Orlando Bowman and Witnessed by Mr. & Mrs. McIntosh as follows.
[fn. 2] 2. The briefs indicate that because of the testator's many obligations the final figures are not yet known. At any rate, they are not pertinent to the issues raised by this appeal.
[fn. 3] 3. The section provides: "If the testator makes provision by his will, or designates the estate to be appropriated, for the payment of his debts, the expenses of administration, or family allowance, they must be paid according to such provision or out of the estate thus appropriated, so far as the same is sufficient. If insufficient, that portion of the estate not disposed of by the will, if any, must be appropriated for that purpose: and if that is not sufficient, the property given to residuary legatees and devisees, and thereafter all other property devised and bequeathed is liable for the same, in proportion to the value or amount of the several devises and legacies, but specific devises and legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate."
[fn. 4] 4. Respondents' contention that the New York cases are not pertinent is patently without merit. Sections 970-977 of the Probate Code were derived from section 124 of the New York Decedent Estate Law (Estate of Armstrong, supra, 800). Respondents' attempt to distinguish the New York cases on the basis of the 1950 amendment to the New York statute is likewise misplaced as the amendment was mainly declaratory of existing law (Matter of Mattes' Estate, 205 Misc. 1098 [130 N.Y.S.2d 270]), and In re Shubert's Will, supra, relies on Matter of Pratt's Estate, 31 MisCal.2d 300 [123 N.Y.S.2d 425], based on the pre-1950 statute, to reach the same result we do here.
[fn. 5] 5. Respondent Dobson's assertion that the University is estopped from asserting this issue because it submitted findings identical to those adopted by the court need not be dignified with discussion as the University's suggested finding was clearly phrased in qualified language and thus did not raise an estoppel (Desny v. Wilder, 46 Cal.2d 715 [299 P.2d 257]).
[fn. 6] 6. Section 974: "The tax shall be paid by the executor or administrator out of the estate before its final distribution."