247 Cal.App.2d 510 (1966)
Estate of CATHERINE PHILLIPS, Deceased. LEO W. LYONS, as Executor, etc., Petitioner and Respondent,
v.
THOMAS C. LYNCH, as Attorney General, Objector and Appellant.
Civ. No. 30709. 
California Court of Appeals. Second Dist., Div. Four. 
Dec. 28, 1966.
 Thomas C. Lynch, Attorney General, and Carl Boronkay, Deputy Attorney General, for Objector and Appellant.
 Harold L. Myers for Petitioner and Respondent.
 BISHOP, J. [fn. *]
 Our attention is to center on this passage in the holographic will of the testatrix which follows a number of specific bequests: "My jewelry is to be sold. I leave the balance to my brother Leo Lyons and at his death it shall go to a Tubercolosis instute [sic]. He must give an account of any big amount before his death and handle all my affairs. To *511 my dogs I will $500.00 to be cared for an an autopsy held that they died a natural death." With the words before it that we have emphasized, the probate court, in response to a petition for a decree determining interest, adjudicated that the residue of the estate was to be distributed to Leo W. Lyons "as life tenant with power to consume principal and interest and that on his death the part of the residue which has not been used was to go to a tuberculosis institute to be designated at time of distribution."
 [1a] The Attorney General, mindful of his responsibility respecting public charities, [fn. 1] appealed from the Decree Determining Interest in Estate, making special reference to the portion we have just quoted, the effect of which might well be to keep a considerable portion of the "balance" from ever reaching the tuberculosis "instute." Persuaded that the powers expressly given the "life tenant" [fn. 2] by the decree were too broad, we are directing that the order be amended, and as so amended, affirmed.
 [2] A hearing was held on the petition to determine heirship, but it is agreed that no evidence was received that touches on the question of interpretation with which we are concerned, so that we may approach the problem not bound by the decision of the probate court.
 [1b] Those who defend the interpretation given the will by the probate court place considerable emphasis upon the words of the will "He must give an account of any big amount before his death," reading into them a recognition of a right to spend a "big amount" if he saw fit. We note, however, that those words were a part of a complete sentence, the concluding words of which were "and handle all my affairs." We interpret the sentence, as it is evident the trial court did, as an inartful way of designating the subject of the sentence as the executor. No place else in the will is an executor designated. Yet, when Leo Lyons petitioned to be named administrator with the will annexed, he was appointed executor and *512 quite properly, as was the one asked to "have charge of my affairs" selected in Estate of Henderson (1925) 196 Cal. 623, 638- 639 [238 P. 938].
 We must confess that the testatrix' choice of words, in writing her will, gives us little hint of the content of her mind respecting just how far Leo Lyons was to go in his use of the "balance." This we do know: she did not expressly invest him with authority to "consume principal and interest," nor do we see any part of her will that suggests such a broad power. She does tell us that at her brother's death "it shall go" to a tuberculosis hospital. What is "it"? The "balance" after satisfying the several specific bequests.
 We must express our surprise at finding no case, in the briefs on appeal, that meets our needs, and a great sparsity of them in the books. Estate of Hartman (1937) 21 Cal.App.2d 266, 270 [68 P.2d 744] is of assistance. There the fifth provision of a wife's will left "a life estate" to her husband in her separate property, consisting of her securities, and to her niece "the remainder over ... of all my separate property after the termination of the life estate to my husband." It was contended that this meant that the husband should have the money from the sale of the securities "to use the money during his lifetime as he might choose to do, with the remainder over of the unused portion to her niece." The probate court did not so read the will, but declared that the husband was "to receive solely the income from the personal property [shares and cash] ... during the period of his natural life, but no part of the principal or corpus thereof whatsoever." The comment of the reviewing court at first seems a bit obscure. It is this: "The language of the will is clear and unambiguous; therefore, this court has no power to speculate as to the intention of the testatrix." Reading further one finds that the judgment was affirmed, indicating that the words of the will, in the opinion of the court, clearly and unambiguously express the intent that the "life tenant" of the stock and money was not to use it "up," but save the principal for the one who was to receive it thereafter.
 It is therefore ordered:
 1. That subdivision numbered 8 of the Decree Determining Interest in Estate, filed December 30, 1965, be amended to read: "8. All the rest, residue and remainder to Leo W. Lyons with the power to use the income therefrom during his lifetime, and on his death it shall go to a tuberculosis institute *513 to be determined by the court." As so modified, the decree is affirmed.
 2. That each party shall bear his own costs on appeal.
 Jefferson, Acting P. J., and Kingsley, J., concurred.
NOTES
[fn. *] *. Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.
[fn. 1] 1. See discussion in Holt v. College of Ostopathic Physicians and Surgeons (1964) 61 Cal.2d 750, 753 [40 Cal.Rptr. 244, 246-247, 394 P.2d 932].
[fn. 2] 2. It is stated, in Estate of Giacomelos (1961) 192 Cal.App.2d 244, 246 [13 Cal.Rptr. 245, 246, 91 A.L.R.2d 956], without the citation of any authority, that "of course, there can be no life estate in moneys." Most of the "balance" that was distributed to Leo Lyons was "moneys," but we see no reason to debate the question: did he receive them as a life tenant; he did receive them for use during his life.