63 Cal.App.3d 319 (1976)
133 Cal. Rptr. 737
Estate of PEARL PHYLLIS TAFF, Deceased.
RUBY SALEEN et al., Plaintiffs and Appellants,
v.
CLARENCE AULMAN, as Executor, etc., et al., Defendants and Respondents.
Docket No. 2975.
Court of Appeals of California, Fifth District.
November 3, 1976.
*321 COUNSEL
Files, McMurchie, Foley & Brandenburger and Stephen A. Brandenburger for Plaintiffs and Appellants.
T.N. Petersen for Defendants and Respondents.
OPINION
FRANSON, J. 

STATEMENT OF THE CASE
The will of the decedent, Pearl Phyllis Taff, dated February 28, 1961, was admitted to probate, and Clarence Aulman was appointed executor. Thereafter appellants, all related to the decedent's predeceased husband, Harry C. Taff, petitioned the court to determine heirship and for an order that they were intended as heirs of Pearl Taff under her will and entitled to distribution of a portion of her residuary estate.
Clarence Aulman, as executor of the estate, acting for the respondents, all of whom are related by blood to Pearl Taff, filed an answer to the petition alleging that by the words "my heirs" as used in her will, Pearl Taff meant only the blood members of her side of the family.
Respondents moved for summary judgment in the heirship proceeding. The motion was granted, the trial court finding that it was the intent of Pearl Taff that the residue of her estate go to the three children of her *322 deceased sister, Margaret Aulman, namely, respondents Clarence Aulman, Margaret Searcy and Harry C. Aulman. Summary judgment for respondents was entered, and appellants' petition for heirship was dismissed. Thereafter, respondents petitioned the court for an order confirming an agreement of inheritance whereby respondents Clarence Aulman, Margaret Searcy, Harry C. Aulman and Ladene Parrish had agreed to share equally in the residuary estate to be distributed under decedent's will. The trial court approved said agreement.
Appellants filed a timely notice of appeal from the summary judgment.

FACTS
Pearl Phyllis Taff signed her will on February 28, 1961. Prior to her signing, she had instructed her attorney, T.N. Petersen, who prepared the will, that the residue of her estate was to go to her sister, Margaret M. Aulman; in the event Margaret M. Aulman did not survive her, then Pearl Taff wanted the residue "to go to her own family, her own blood relatives." As part of her instructions, she told Petersen that "she felt she was making adequate provision for Harry's (her predeceased husband's) family in the two specific gifts to Harry's sisters which she was providing in her will and she felt no obligation to the other members of Harry's blood relations and was making no gifts to them."
On February 22, 1961, six days before signing her will, Pearl Taff wrote to her sister, Margaret Aulman. In the letter Pearl Taff stated that the residue of her estate was to pass "to my dear sister, Margaret M. Aulman  or if she predeceases me in death  then to her heirs."
In the will as prepared, the residue of the estate is bequeathed to decedent's sister, Margaret M. Aulman, but in the event Margaret M. Aulman does not survive the decedent: "... the residum [sic] of my estate, after payment of debts and taxes and specific bequests as set forth, is to pass to my heirs in accordance with the laws of intestate succession, in effect at my death in the State of California, or in effect in such other state or such other place as I may be a resident at the time of my death."
The decedent's sister, Margaret M. Aulman, predeceased the decedent on January 9, 1966.
*323 Pearl Taff died childless on January 27, 1975. Her will was admitted to probate on February 18, 1975.
Appellants are related to the decedent's predeceased husband, Harry C. Taff, as sister, nieces, nephew and grandnephews. Respondents are related to the decedent as blood nephews and nieces. Three of the respondents are children of decedent's predeceased sister, Margaret M. Aulman; one is the daughter of decedent's predeceased sister, Stella Susan Wickert. Appellants claim they are entitled to a portion of the residue of decedent's estate pursuant to the California laws of intestate succession, specifically Probate Code sections 228 and 229. Their claim is predicated upon the residuary provision in decedent's will quoted above.

DISCUSSION
(1a) The sole issue is whether the trial court erred in admitting extrinsic evidence to prove that the decedent intended her residuary estate to go in a manner contrary to the seemingly clear and unambiguous language used in her will. We hold that the court did not err in admitting the extrinsic evidence and that it properly interpreted the will to effectuate the intention of the decedent as required by Probate Code section 101.
The trial court heard testimony of decedent's attorney, T.N. Petersen, to the effect that decedent had told him that she wanted to leave the residue of her estate to her sister, Margaret Aulman, or in the event that Margaret Aulman predeceased her, then to the members of decedent's own family, "her own blood relatives." This declaration, of course, is contrary to the residuary clause as it appears in decedent's will which was written by T.N. Petersen.[1]
The trial court also received into evidence and considered a letter written by the decedent to her sister six days before the decedent signed her will and apparently after she had visited Petersen and instructed him as to her wishes in drawing the will. This letter recited that the residue of the decedent's estate was to pass to her sister, Margaret M. Aulman  or *324 if Margaret Aulman predeceased the decedent  then to Margaret Aulman's heirs. This declaration also is contrary to the residuary clause as it appears in the decedent's will.
Appellants rely on Estate of Watts (1918) 179 Cal. 20 [175 P. 415], (1921) 186 Cal. 102 [198 P. 1036], for the proposition that when the language of intent in the testatrix's will is clear and unambiguous, "it `must be interpreted according to its ordinary meaning and legal import, and the intention of the testator ascertained thereby.'" (179 Cal. at p. 23; see also Prob. Code § 106; Estate of Willson (1915) 171 Cal. 449, 456 [153 P. 927].) In Watts, supra, the Supreme Court excluded evidence of oral declarations by the testatrix to the draftsman of her will that when she used the words "my heirs" she intended to refer only to her own kin. (186 Cal. at pp. 104-105.)
Under Watts, supra, if the words chosen by the testator had a common, general and unambiguous meaning, evidence of a special meaning which the testator actually attached to such words was inadmissible. (See Prob. Code § 106; Estate of Willson, supra, 171 Cal. at p. 456; Estate of Loescher (1955) 133 Cal. App.2d 589, 594 [284 P.2d 902].)
(2) However, in Estate of Russell (1968) 69 Cal.2d 200 [70 Cal. Rptr. 561, 444 P.2d 353], our Supreme Court substantially abrogated the "plain meaning" rule. (See 7 Witkin, Summary of Cal. Law, Wills and Probate § 162 pp. 5678-5679; 22 Hastings L.J. (1971) pp. 1350-1355.) In Russell, supra, the trial court admitted extrinsic evidence that a named beneficiary of the testatrix's estate, Roxy Russell, was the decedent's dog. In approving the consideration of the extrinsic evidence, the Supreme Court stated: "... extrinsic evidence of the circumstances under which a will is made (except evidence expressly excluded by statute) may be considered by the court in ascertaining what the testator meant by the words used in the will. If in light of such extrinsic evidence, the provisions of the will are reasonably susceptible of two or more meanings claimed to have been intended by the testator, `an uncertainty arises upon the face of a will' (§ 105) and extrinsic evidence relevant to prove any of such meanings is admissible (see § 106)...." (69 Cal.2d at p. 212.)
Under Russell, supra, extrinsic evidence is admissible both to show that a latent ambiguity exists and to resolve the latent ambiguity. (Estate of Flint (1972) 25 Cal. App.3d 945, 954 [102 Cal. Rptr. 345].) "Extrinsic *325 evidence is now admissible to show that the apparently clear and unambiguous language of the will is in fact ambiguous.... If ... the extrinsic evidence does reveal a reasonable second interpretation, the will is deemed to be ambiguous, and [Prob. Code] section 105 will permit the admission of extrinsic evidence to discover the testator's intent." (22 Hastings L.J. (1971) pp. 1353-1354.)
Although Russell, supra, did not expressly overrule Watts, supra, it clearly ended the vitality of Watts insofar as the plain meaning rule is concerned by permitting the trial court to consider extrinsic evidence to prove a reasonable second meaning of the language used in the will. Extrinsic evidence contradicting the express terms of a will will be excluded today only where no reasonable ambiguity is made to appear by the extrinsic evidence. (69 Cal.2d 208-212.)
(1b) In the present case the declarations of the decedent to her attorney and her sister exposed a latent ambiguity, i.e., that when the testatrix used the term "my heirs" in her will, she intended to exclude the relatives of her predeceased husband, Harry. Under Russell, supra, the extrinsic evidence was properly received both to create the ambiguity in the word "heirs" and to resolve the ambiguity. (Estate of Flint, supra, 25 Cal. App.3d at p. 954.)
Appellants argue that Probate Code section 105 precludes the consideration of a testator's oral declarations as to his intent. Section 105 provides: "When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; ... (Italics added.)
However, it has long been held that oral declarations made by a testator to the scrivener of the will are admissible to resolve a latent ambiguity. In Estate of Dominici (1907) 151 Cal. 181 [90 P. 448], our Supreme Court noted that the statute prohibiting admission of oral declarations was contrary to the prevailing American and English law and declared: "[The prohibition] will not be extended, therefore, beyond its actual language, and will be held to apply to the mere incidental fugitive utterances or declarations of intent, as distinguished from the specific instructions as to testamentary disposition which it may be proved were given." (151 Cal. at p. 185; Estate of Carter (1956) 47 Cal.2d *326 200, 207-208 [302 P.2d 301]; Estate of Greenwald (1937) 19 Cal. App.2d 291, 297-299 [65 P.2d 70].)
(3) Appellants next argue that Probate Code section 106 and case law require a trial court to interpret technical words used in a will drawn by an attorney in their technical sense. Probate Code section 106 provides: "... technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn solely by the testator and that he was unacquainted with such technical sense."
The presumption of technical meaning established by section 106, however, is subordinate to the dominant purpose of finding and effecting the intent of the testator; the presumption is an aid to be used in ascertaining that intent, not a tool by which the court frustrates the testator's objectives. (See Estate of O'Connell (1972) 29 Cal. App.3d 526, 531 [105 Cal. Rptr. 590]; Estate of Dodge (1971) 6 Cal.3d 311, 324-325 [98 Cal. Rptr. 801, 491 P.2d 385]; Estate of Mohr (1970) 7 Cal. App.3d 641, 645 [86 Cal. Rptr. 731]; Prob. Code, § 101.)
Appellants' final contention is that the trial court exceeded its authority in ruling on respondents' motion for summary judgment when it found that neither the will nor the oral declarations of decedent to her attorney reflected her testamentary intent, but that the letter written by the decedent to her sister did so that only the three children of Margaret Aulman would take under the will. It is clear that the trial court did err on this point; however, appellants have no standing to assert the issue.[2] Once the court determined as a matter of law that the decedent's will excluded appellants from any part of the residuary estate, appellants lost their standing to complain of the trial court's subsequent decision regarding respondents' rights, inter se, to the residuary estate.
*327 (1c) Because the extrinsic evidence is not in conflict as to the decedent's intention to exclude the relatives of Harry C. Taff from taking any part of the residuary estate, and because the term "my heirs" as used in the will is reasonably susceptible to mean the decedent's heirs other than the relatives of Harry Taff, the trial court properly decided as a matter of law that appellants have no right to any portion of the residuary estate.
Where the extrinsic evidence is not in conflict, the question of the meaning of a will is one of law and the reviewing court must give the writing its own interpretation. (Parsons v. Bristol Dev. Co. (1965) 62 Cal.2d 861 [44 Cal. Rptr. 767, 402 P.2d 839].) This we have done.
The judgment is affirmed.
Brown (G.A.), P.J., and Thompson, J.,[*] concurred.
Appellants' petition for a hearing by the Supreme Court was denied December 29, 1976.
NOTES
[1] The residuary clause provides that in the event Margaret M. Aulman does not survive the decedent, the residue is to pass to the decedent's "heirs" in accordance with the laws of intestate succession. Because the residuary estate consists of community property of the decedent and her previously deceased spouse and was received by the decedent by virtue of its community character on the death of her spouse, under Probate Code section 228, one-half thereof would go to respondents as heirs of the decedent.
[2] The reason the trial court erred is that the term "my heirs" as used by the decedent in her will is not reasonably susceptible to mean only the three children of Margaret Aulman, to the exclusion of Ladene Parrish, a blood niece of the decedent. Under Estate of Russell, supra, the "plain meaning" of written words can be altered by extrinsic evidence only where the written words are susceptible of another reasonable interpretation. (69 Cal.2d at p. 211.)

The letter to Margaret Aulman stated that in the event of Margaret's death, the residum would go to "your heirs," i.e., to Margaret's heirs. Since Ladene Parrish is an heir of Margaret as well as an heir of the decedent, it was unreasonable for the trial court to exclude Ladene from the will. However, the agreement of inheritance filed with and approved by the trial court giving each respondent the right to one-fourth of the residuary estate accords with the reasonable interpretation of the will and renders the trial court's error moot.
[*] Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.