[Civ. No. 23349. Fourth Dist., Div. Two. Dec. 10, 1980.]

Estate of GRACE C. STEELE, Deceased.
RICHARD STEELE, as Executor, etc., Petitioner and Appellant, v.
ARLEAN TOULSON, Objector and Respondent.

**COUNSEL**

Meserve, Mumper & Hughes and Ernest J. Schag, Jr., for Petitioner and Appellant.

Levy, Leipziger & Norminton and David A. Leipziger for Objector and Respondent.

## OPINION

TAMURA, J.—The executor of the estate of Grace C. Steele, deceased, petitioned under Probate Code section 1080[1] for a determination whether a $12,000 per year bequest to Arlean Toulson (objector) should be charged with a proportionate share of federal estate and California inheritance taxes. The trial court determined that the bequest was not subject to apportionment of taxes and ordered that the bequest be paid without diminution for taxes. Executor appeals from this order.

The facts which gave rise to the instant appeal are as follows: Grace Steele died testate in 1974 leaving a formally witnessed will, first, second and third codicils, and a holographic codicil. The testamentary documents were all admitted to probate. In her will, executed in 1962, decedent left a number of specific legacies to charities and educational institutions and the residue of her estate in trust for her four children. Article Eight of the will directed that estate and inheritance taxes be prorated equitably among those persons receiving gifts from the gross

---

[1]Subsequent statutory references are to the Probate Code unless otherwise indicated.

Section 1080 provides: "Anytime after first publication of notice to creditors and prior to the time a petition for final distribution has been filed, the executor or administrator, or any person claiming to be an heir of the decedent or entitled to distribution of the estate or any part thereof may file a petition setting forth his claim or reason and praying that the court determine who are entitled to distribution of the estate. The clerk shall set the petition for hearing by the court and give notice thereof for the period and in the manner required by Section 1200 of this code. At least 10 days before the date set for the hearing of such petition by the court, the petitioner shall cause notice of the hearing thereof to be mailed to the executor or administrator and to all legatees and devisees and to all known heirs of the decedent, and to all persons (or their attorneys, if they have appeared by attorney) who have requested notice as provided in Section 1202 of this code, or who have given notice of appearance in person or by attorney, addressed to them at their respective post office addresses given in their requests for special notice or notice of appearance, if any, otherwise at their respective offices or places of residence, if known, and if not, at the county seat of the county where the proceedings are pending, or to be personally served upon such persons. Any person may appear and file a written statement setting forth his interest in the estate. No other pleadings are necessary and the allegations of each claimant shall be deemed to be denied by each of the other claimants to the extent that they conflict with any claim of the latter.

"Whenever any estate involves, or may involve, a charitable trust, other than a charitable trust with a designated trustee which may lawfully accept such trust, or involves or may involve a bequest or devise for a charitable purpose without an identified legatee, devisee, or beneficiary thereof, or an escheat to the State of California, the Attorney General shall be deemed to be a person entitled to distribution within the meaning of this section and shall be entitled to file the petition referred to in this section and shall be given written notice of the hearing in the same manner as legatees and devisees."

taxable estate.[2] The first codicil left some specific legacies to private individuals and also changed the residuary clause of the will, leaving the residue of the estate to decedent's four children as trustees of a living trust. The living trust provided that the trustees should set aside one-half of the trust estate on hand at decedent's death to be distributed to the Harry G. Steele Foundation, a charitable corporation. Decedent's second and third codicils made small modificatiions to the will not pertinent to this appeal.

The holographic codicil, which was executed in 1969, is at the center of the present controversy. In that codicil, decedent willed to objector Arlean Toulson $12,000 a year for life from decedent's estate or alternatively from the Harry G. Steele Foundation, stating that objector had been like a daughter to her, that she had been a faithful companion, and that "I owe her."[3]

After the will and codicils were admitted to probate, executor petitioned the court for an order to purchase a commercial annuity for objector pursuant to section 584.[4] The executor alleged that the bequest was an annuity as defined by section 161, subdivision (3),[5] and stated

---

[2]Article Eight of decedent's will states in pertinent part: "[T]hat all federal estate taxes imposed upon or in relation to any property required to be included in my gross taxable estate under the provisions of any federal tax law shall be paid in the first instance by my Executors but that the ultimate burden of such taxes shall be equitably prorated among, charged to, and collected from the legatees, devisees, trustees, donees, persons, or beneficiaries sharing my gross taxable estate as and to the extent provided by any applicable tax law or proration statute. Inheritance and succession taxes shall be paid, deducted, and collected as provided by law."

[3]The holographic codicil provides: "I will to Mickey towlsom [sic] [Arlean Toulson] $12,000 a year for her Liffe [sic] time from my esstate [sic] or from the Harrey [sic] G. Steele Foundation. Micky [sic] Has been like a daugghter [sic] to me and a faithful commpan. . [sic] I owe her — July 20, 1969 Ga [sic] Grace C. Steele"

[4]Section 584 provides: "Pending the settlement of an estate, or at the time of settlement of an estate, on the petition of the executor or administrator, or of any person interested in the estate, and upon good cause shown therefor, the court may order any money in the hands of the executor or administrator, to be invested for the benefit of the estate in securities of the United States or of this State or in the purchase from an insurer admitted to do business in this State and for any legatee named in the will of an annuity expressly granted to him by said will. The clerk shall set the petition for hearing by the court and give notice thereof for the period and in the manner required by Section 1200 of this code."

[5]Section 161, subdivision (3), provides: "Legacies are distinguished and designated, according to their nature, as follows:...[¶] (3) An annuity is a bequest of certain specified sums periodically; if the fund or property out of which a demonstrative legacy

that the purchase of a commercial annuity would discharge the estate's obligation to objector, guarantee payment of the annuity while protecting objector's interests, and allow the executor to close the estate and obtain a charitable deduction under Internal Revenue Code section 2055 for the residue of decedent's estate passing to charity. The executor requested permission to purchase a single premium annuity in the amount of $193,219. Objector filed a waiver of notice and consent to the petition. The trial court thereupon found that the bequest was an annuity as defined in section 161, subdivision (3), and ordered the executor to purchase a commercial annuity to provide "$12,000 per annum for life" for objector.[6]

Executor subsequently purchased a single premium commercial annuity to provide for payment of $12,000 per year for life to objector in increments of $1,000 per month. The estate has been receiving the $1,000 monthly annuity payments. However, executor has contended that the bequest is subject to apportionment of federal estate and state inheritance taxes and that objector's prorated share of these taxes is $109,501. Pursuant to stipulation of the parties, executor is placing $679 from each annuity check in trust until it has been determined whether objector's annuity is to be charged with the taxes, and has been forwarding to objector $331 per month as her annuity payment. Should objector's annuity be held subject to proration of taxes, she will receive $331 per month for approximately nine years[7] by which time, the prorated share of taxes will have been paid and objector thereafter will begin receiving $1,000 per month.

---

or an annuity is payable fails, in whole or in part, resort may be had to the general assets, as in case of a general legacy;..."

[6]Objector's acquiescence to the characterization of the bequest as an annuity and purchase of the commercial annuity enabled executor to bring a dispute with the Internal Revenue Service to a favorable conclusion and place several million dollars in the Harry G. Steele Foundation, a nontaxable charitable corporation. In his petition pursuant to section 584, executor stated that "[u]pon audit of the federal estate tax return filed on behalf of the estate, the Internal Revenue Service initially suggested that the bequest of the annuity might have created a split interest bequest not qualifying for the estate tax charitable deduction. Petitioner presented evidence that under California law, the annuity obligation could be satisfied through the purchase of an annuity pursuant to Probate Code § 584, and therefore, the bequest did not create a non-qualifying interest in both the non-charitable and the charitable beneficiaries. The Internal Revenue Service has agreed that if this Court orders the purchase of the annuity, the estate will be entitled to an estate tax charitable deduction for the portion of the residue of decedent's estate passing to charity,..."

[7]This time frame was arrived at by dividing the amount of taxes allegedly owed by the amount being withheld monthly in trust for tax purposes, attaining a figure of 13

Executor rendered a final account and report and filed a petition for final distribution of the estate. Upon Arlean Toulson's objection to proration of the taxes, the executor filed a petition pursuant to section 1080 for a determination as to whether the annuity bequest should be subject to apportionment of taxes. As part of her opposition to the petition, objector filed a declaration in which she stated that she was employed for about 12 years until decedent's death as her nurse and companion, that she was paid $9,000 per year for her work, and also was provided with an apartment, food (she ate all her meals with decedent), and the use of decedent's automobiles. The court ruled by a minute order that objector's annuity was not subject to proration of taxes, stating: "The Court finds that the gift to the objector is an interest in income for life for the purposes of Probate Code Section 973 and Revenue and Taxation Code section 14123 [*sic*]; that the language of the codicil 'I owe her' indicates the decedent's intention to provide the objector with the same income that the decedent was paying the objector prior to her death."[8] The court ordered the executor to pay objector $12,000 per year free and clear of taxes, and that all sums withheld be paid over forthwith.

On appeal, executor contends that the court erred in ruling that the bequest to objector is not subject to equitable apportionment of federal estate and state inheritance taxes. He argues that section 970[9] and Revenue and Taxation Code section 14123[10] require that annuities bear a

---

1/2 years, and then figuring the start of the annuity payments from decedent's death in 1974.

[8]The parties agree that in citing Revenue and Taxation Code section 14123 the court repeated an error made by objector in her Rebuttal Points and Authorities, wherein reference was mistakenly made to Revenue and Taxation Code section 14123 rather than Revenue and Taxation Code section 14124.

[9]Section 970 provides: "Whenever it appears upon any accounting, or in any appropriate action or proceeding, that an executor, administrator, trustee or other fiduciary has paid an estate tax to the Federal Government under the provisions of any Federal estate tax law, now existing or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, and except in a case where by written instrument executed inter vivos direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such inter vivos instrument, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues."

[10]Revenue and Taxation Code section 14123 provides: "If a money legacy as to which a tax is imposed by this part is given to any person for a limited period, the ex-

proportional share of death taxes, and that the exceptions to the rule of proration provided by section 973[11] and Revenue and Taxation Code section 14124[12] do not extend to annuities. The executor also contends that the decedent's testamentary writings do not express an intention that the bequest to objector should not be charged with proration of taxes. Executor argues that the Eighth Article of the will expresses decedent's intention that all those taking under the will be subject to equitable apportionment of taxes, and that the holographic codicil fails to express a contrary intention with regard to the annuity.

As we explain below, we have concluded that neither section 973 nor Revenue and Taxation Code section 14124 excludes annuities from bearing an apportioned share of the taxes. However, we have also concluded that it is clear from the language of the holographic codicil, viewed in the context of the circumstances surrounding the execution of the codicil, that decedent intended objector to receive $12,000 per year without proration of taxes.

I

■ It is the public policy of this state that, subject to the testator's expression to the contrary, death taxes should be prorated. (*Estate of Neider* (1966) 243 Cal.App.2d 102, 107 [52 Cal.Rptr. 47].) The incidence of federal estate taxes is governed by sections 970-977, while payment of state inheritance taxes is covered by Revenue and Taxation Code sections 14121-14128. Section 970 directs that estate taxes "shall be equitably prorated among the persons interested in" and benefitting

---

ecutor, administrator, or trustee shall deduct the tax from the whole amount given. If a legacy for a limited period as to which the tax is imposed is not money, the executor, administrator, or trustee shall, if necessary, apply to the superior court having jurisdiction for a determination of the tax to be paid into his hands by the legatee, and for such further determination as the case may require."

[11]Section 973 provides: "In cases where a trust is created, or other provision made whereby any person is given an interest in income, or an estate for years, or for life, or other temporary interest in any property or fund, the tax on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary estates."

[12]Revenue and Taxation Code section 14124 provides: "Where a transferor has given one person any right, interest, or estate for life or for a term of years, and another person the remainder over, in the same property, the executor, administrator, or trustee shall pay the tax on each transfer out of the corpus of the property. The tax shall not be charged against the right, interest, or estate of, nor shall it be collected from, either transferee."

from any property included in the gross taxable estate of a decedent, "except in a case where a testator otherwise directs in his will,..." Revenue and Taxation Code section 14121 mandates that "every executor,...shall deduct the [inheritance] tax from the property, if the property is money, or, if the property is not money, shall collect the tax from the transferee."

There are, however, specific statutory exceptions to the rule of proration. Section 973 states that "[i]n cases where a trust is created, or other provision made whereby any person is given an interest in income, or an estate for years, or for life, or other temporary interest in any property or fund, the tax on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary estates." Revenue and Taxation Code section 14124 provides that "[w]here a transferor has given one person any right, interest, or estate for life or for a term of years, and another person the remainder over, in the same property, the executor...shall pay the tax on each transfer out of the corpus of the property. The tax shall not be charged against the right, interest, or estate of, nor shall it be collected from, either transferee." The trial court determined that objector's annuity was not chargeable with death taxes because it was "an interest in income for life for the purposes of" both section 973 and Revenue and Taxation Code section 14124.

Executor contends that an annuity does not come within the nonapportionment provisions of section 973 or Revenue and Taxation Code section 14124, and moreover that an annuity is specifically chargeable with inheritance tax by virtue of Revenue and Taxation Code section 14123, which states in pertinent part that "[i]f a money legacy as to which a tax is imposed by this part is given to any person for a limited period, the executor, administrator, or trustee shall deduct the tax from the whole amount given." We agree.

The question whether a gift of an annuity must bear a prorated portion of death taxes absent a contrary expression of intention by the testator appears to be one of first impression in California. In order to determine if an annuity is one of those interests which the Legislature has directed shall be transferred free of death taxes, we first examine the nature of an annuity and then the language of the pertinent statutes.

Section 161, subdivision (3) describes an "annuity" as "a bequest of certain specified sums periodically; if the fund or property out of which ...an annuity is payable fails, in whole or in part, resort may be had to the general assets,..." Our case law expands upon this definition and points up the legal distinction between an annuity and a bequest of income. ■ "A gift of income is not an annuity. [*Estate of Bourn* (1938) 25 Cal.App.2d 590, 597 (78 P.2d 193).]... 'An annuity is a periodic payment which is payable unconditionally, there being no contingency present....On the other hand the beneficiary of a trust to pay income or the legatee of an income is ordinarily dependent upon the existence of income, the amount received by him fluctuating with the income.' (*Estate of Markham*, 28 Cal.2d 69, 73....) An annuity may be made payable out of any assets of the testator or from a fund set aside for that purpose. (*Estate of Bourn, supra*, 25 Cal.App.2d 590, 598.)" (*Estate of Luckel* (1957) 151 Cal.App.2d 481, 488 [312 P.2d 24].)

■ Applying the foregoing definition to the language of section 973 and Revenue and Taxation Code section 14124, an annuity cannot be classified as a nonchargeable interest. Section 973 speaks of "an interest in income...or other temporary interest in any property or fund,..." As noted above, an annuity is not an income interest because it is not contingent upon trust or other income. Nor is it a temporary interest in a specific property or fund, since it may draw upon the general assests of an estate. Revenue and Taxation Code section 14124 refers to a temporary "right, interest, or estate" in a property in which another person has a remainder. An annuity is not an interest in a specific fund or property, and there need be no remainder over after the payment of an annuity. The definition of an annuity under California statutory and case law comports much more closely with the description of a taxable money gift found in Revenue and Taxation Code section 14123—"a money legacy...given to any person for a limited period..."[13]

---

[13]The treatment of annuities for death tax purposes in other states throws little additional light on the question before us. In New York, the courts held that a statute worded identically to section 973 exempting temporary interests and remainders from death taxes did not cover annuities. (*Re Starr's Estate* (1935) 157 Misc. 103 [282 N.Y.S. 957].) The reason for this application of the statute may be unique to New York law, however, since "the New York Court of Appeals had similarly distinguished between an income interest in a trust and an annuity in determining how the earlier transfer tax of that state was to be borne, and...in presenting the original apportionment act to the legislature, a note of the sponsoring committee made it clear that the former rule respecting the tax on annuities was continued." (Annot., 71 A.L.R.3d 247, 336-337; fns. omitted.) The current New York statute specifically excepts annuities

We conclude that the trial court erred in determining that objector's annuity is "an income interest for life" and thus under section 973 and Revenue and Taxation Code section 14124, statutorily excepted from the rule of proration.

## II

We turn to the question whether the decedent expressed an intention that the bequest to objector not be subject to proration of taxes.

■ The trial court interpreted the codicil to mean that the objector was to *receive* $12,000 per year. However, unless the interpretation turns on the credibility of extrinsic evidence, the trial court's interpretation is not binding and we must independently interpret the instrument. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385].) In the instant case, the record discloses no conflict in the extrinsic evidence nor any issue of credibility. We, therefore, proceed to make an independent interpretation.

■ The basic principle of the interpretation of wills, to which all other rules must yield, is that the testator's intention must be carried out as nearly as possible. (§ 101; see 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 159, pp. 5674-5675, and cases cited therein.) Thus, while apportionment of taxes is the general rule, an exception is recognized "when there is a clear and unambiguous direction to the contrary" on the part of the testator. (*Estate of Armstrong* (1961) 56 Cal.2d 796, 802 [17 Cal.Rptr. 138, 366 P.2d 490]; *Estate of Neider, supra*, 243 Cal.App.2d 102, 108 [52 Cal.Rptr. 47].) In the case at bench, we must decide whether decedent's· holographic codicil contains a clear expression that the bequest was to go undiminished by death taxes.

■ In ascertaining a testator's intention, terms employed by a lay person in drawing up a testamentary document without professional legal assistance should be interpreted in a lay person's sense, rather than in a· technical legal sense. (*Estate of Peabody* (1908) 154 Cal. 173,

from death tax exemption. (*Re Arnold's Will* (1962) 36 Misc.2d 695 [233 N.Y.S.2d 419]; Annot, 71 A.L.R.3d 337.) The high court of Tennessee has indicated in dicta that it would not be inclined to follow New York's lead in interpreting a temporary and remainder interest exemption statute to exclude annuities, but offers no reasons for its lack of inclination other than that New York's interpretation has "no logical basis." (*Moore v. Moore* (1958) 204 Tenn. 108 [315 S.W.2d 526, 531].)

175-176 [97 P. 184]; see *Estate of Phillips* (1966) 247 Cal.App.2d 510, 511-512 [55 Cal.Rptr. 658]; see also *Estate of Plumer* (1958) 159 Cal. App.2d 389. [324 P.2d 346].) Decedent's holographic codicil states: "I will [objector] $12,000 a year for her [life]...[objector] Has been like a [daughter] to me and a faithful [companion]. I owe her —" In 1969 when the codicil was written, objector had been in decedent's employ for approximately seven years and she continued to serve as decedent's nurse and companion for the remaining years of decedent's life. During the entire period, decedent paid her $9,000 per year, and also furnished her with a place to live, food and access to automobiles. Given these circumstances and interpreting the words of the codicil in lay terms, we think it is clear that decedent meant to assure objector approximately the same level of income as when she was decedent's companion. The phrase "I owe her" and the direction that the sum be paid from her estate or from the foundation strongly support this interpretation of testator's intent.

Executor contends that Article Eight of decedent's will providing that death taxes should be equitably prorated among those benefitting from her will is the controlling expression of decedent's intent in this matter. We disagree. Not only was the bequest to objector not a part of the original will, it was made seven years later by a holographic codicil whose terms, as we have indicated, clearly reveal that decedent meant that her companion receive $12,000 per year, undiminished by taxes. Decedent no doubt would have been appalled had she been told that her codicil gave only a net sum of less than one-third of what she thought she had provided for objector for a period in excess of 13 years, and then $12,000 per year if she should live to that time.

In this respect, *Estate of Luckel, supra*, 151 Cal.App.2d 481, 484, is instructive, although it involved the question whether testator intended to create an annuity and not a question of proration of taxes. In *Luckel*, testator instructed in a codicil that "[i]t is also my wish that funds or property of my estate be invested or taken to assure [my wife] during her natural life a monthly income of One Hundred dollars,..." (*Ibid.*) The Court of Appeal ruled that testator intended to provide his wife with *payment* of $100 per month "absolutely without diminution or contingency....The bequest is not subject to diminution resulting in a change from the rate of interest, the payment of taxes, or a failure for any reason of the funds or property to produce the amount." (*Id.*, at p. 490.) Likewise, we think that decedent in her lay person's codicil di-

rected that objector receive $12,000 per year undiminished by payment of taxes or other contingencies.

■ Executor also contends that extrinsic evidence is inadmissible to show that a testator intended a particular bequest be free of proration of death taxes, citing *Estate of Hendricks* (1970) 11 Cal.App.3d 204, 208 [89 Cal.Rptr. 748]. Specifically, he contends that the circumstances of objector's employment relationship to decedent should not be considered in determining whether she intended objector's annuity to be subject to proration of taxes. Executor did not, however, object in the court below to the admissibility of the extrinsic evidence. One who fails to object to the admissibility of evidence in the trial court[14] is deemed to have waived his right to contest the admissibility of the evidence. (E.g., *Perry* v. *McLaughlin* (1931) 212 Cal. 1, 6 [297 P. 554]; *People* v. *Nugent* (1971) 18 Cal.App.3d 911, 917 [96 Cal.Rptr. 209]; *People* v. *Keel* (1969) 272 Cal.App.2d 275, 277-278 [77 Cal.Rptr. 298]; see Witkin, Cal. Evidence (2d ed.) § 1285, p. 1188; Witkin, Cal. Evidence (2d ed. 1966) 1977 Supp., § 1285, pp. 741-742, and cases cited therein.)

■ Even had executor properly preserved the evidentiary issue for appeal, the extrinsic evidence was admissible to show that the decedent intended that the bequest not be subject to proration of death taxes. In California where the language of a will or other writing appears to be ambiguous or uncertain, extrinsic evidence may be considered to ascertain the maker's intention. (*Estate of Dodge, supra*, 6 Cal.3d 311, 318-319; *Estate of Russell* (1968) 69 Cal.2d 200, 206 [70 Cal.Rptr. 561, 444 P.2d 353]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Taff* (1976) 63 Cal.App.3d 319, 324-325 [133 Cal.Rptr. 737]; see generally Annot. 70 A.L.R.3d 630, 639-645.) The foregoing principle has been applied where an uncertainty or ambiguity appears in the language of a will as to a testator's intent regarding apportionment of death taxes; extrinsic evidence was held to be admissible to show that the testator intended the gifts to be relieved of liability for payment of death taxes. (*Estate of Lindner* (1978) 85 Cal.App.3d 219, 225-226 [149 Cal.Rptr. 331].) In *Estate of Hendricks, supra*, 11 Cal.App.3d 204, cited by executor, the court was of the view that extrinsic evidence is inadmissible to show intent on the question of tax proration because "Probate Code section 970 requires that a direction against proration appear in the will." (*Id.*, at p. 208.) While section 970 provides that proration shall

---

[14]Executor raised this issue for the first time at oral argument.

apply unless "testator otherwise directs in his will," we do not interpret this to mean that if the words used by the testator appear to be unclear or ambiguous on apportionment of taxes, extrinsic evidence is inadmissible to show that the language used was intended as a direction against proration. The order is affirmed.

Morris, J., concurred.

**GARDNER, P. J.**—I dissent.

I agree with the majority that an annuity must bear a prorated portion of death taxes absent a contrary expression by the testator. However, I dissent from that portion of the majority opinion which holds that this holographic codicil expresses an intention that the recipient of the annuity be relieved from her share of death taxes.

As the majority observe, apportionment of taxes is the general rule unless there is a clear and unambiguous direction to the contrary. I find no such clear and unambiguous directon in this codicil. If the decedent had wanted this bequest to be handled in a different manner than other bequests, all she had to do was add two words—"without taxes."

The decedent executed a formal, witnessed will and three formal, witnessed codicils. In these she made specific bequests to five individuals. I assume she held these persons in some esteem and did not get their names out of the telephone directory. I infer that they were friends, associates, companions and may have even been former servants. Then she left part of her estate to her children for whom I assume she also had some affection.

The trouble is that this will and these codicils were drafted by lawyers in the usual dull, dry legalese and are conspicuously devoid of any expression of personal affection or interest. Then this old, old lady drew a handwritten codicil leaving an interest in her estate to her nurse. In nonlegal style she expressed some personal interest in the matter. From this set of circumstances and from the use in the codicil of certain phrases such as "like a daughter", "a faithful companion", and "I owe her," the majority now puts this nurse in a different category from the other objects of this lady's bounty and lets these individuals not only pay their portion of the taxes but pay the nurse's portion as well. I can't read into this codicil any clear and unambiguous direction that this

nurse is to be treated in a different fashion than the children or the other individuals named in specific bequests.

I agree with the majority that the decedent would probably be appalled at the diminution of this bequest by reason of taxes. However, I am sure she would have been just as appalled at the diminution in the estate left to her children and the other recipients of specific bequests. I venture to say she would even be more appalled were she to discover that by the interpretation put on this codicil by the majority, the other objects of her bounty are going to have to pay this nurse's share of the taxes. I decline to elevate this holographic codicil to a preferred position over the rest of the will.

I would reverse the trial court and allow this nurse to pay her proportionate share of taxes because there is no clear and unambiguous direction to the contrary. I note in passing that in a few years the nurse is going to get her full $1,000 per month. The other specific legatees are going to receive no such consideration.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1981.