[L. A. No. 26008. In Bank. Nov. 16, 1961.]

Estate of LAURA B. ARMSTRONG, Deceased. ROY E. BOLSTAD, Petitioner and Appellant, v. WELLS FARGO BANK AMERICAN TRUST COMPANY, as Trustee, etc., et al., Objectors and Respondents.

Frank S. Whiting for Petitioner and Appellant.

Robert J. White, Charles H. Clifford and Heller, Ehrman, White and McAuliffe for Objectors and Respondents.

PETERS, J.—The basic question presented on this appeal is whether the probate court correctly decided that the federal estate and state inheritance taxes were entirely payable from the probate estate of the testatrix or should have been prorated over her entire taxable estate.

The problem arises under the following state of facts. The decedent, Laura B. Armstrong, died testate on May 20, 1956, leaving her entire estate, appraised at $40,498, to appellant Roy E. Bolstad and his wife. The legatees were unrelated to the testatrix. Her sole heirs at law were two nieces, Dorothy Ashley, respondent, and Helene Quigley. The two nieces received nothing under the will, but they received $198,215 under the terms of an *inter vivos* trust which, prior to her death, and the death of her husband, had been created for the benefit of the nieces. Mrs. Armstrong had retained the right to revoke this trust, so that, at the time of her death, the assets of the trust became taxable as part of her taxable estate. The federal estate and California inheritance taxes on the entire taxable estate, including the assets of the trust, exceeded the value of the distributable probate estate. The probate court held that the entire probate estate should be applied toward the satisfaction of the death taxes. It based this holding upon its interpretation of the will, holding that, properly interpreted, the will so directed. It is the propriety of this ruling that is under attack on this appeal.

In reaching its conclusion that the taxes should be paid, as far as possible, from the probate estate and should not be prorated over the entire taxable estate, the trial court relied upon the provisions of the second paragraph of the will, which reads as follows:

"I direct my executor or executrix to pay out of my estate all my just debts, funeral expenses, expenses of administration, and all estate and inheritance taxes which may become due by my death, without limitation to property passing under my will."

Before attempting to interpret that paragraph, reference should be made to the other basic provisions of the will. The third paragraph provides:

"I have intentionally failed to provide herein for my nieces, DOROTHY H. ASHLEY and HELENE HOAG QUIGLEY, because of the fact that I believe they have been more than adequately provided for under the terms of that trust heretofore established by myself and my former husband at WELLS FARGO BANK in San Francisco, known as the Joseph M. and

Laura B. Hooker Trust, and by virtue of the terms of which all of the assets comprising said trust will go and be distributed to my said nieces upon my death.''

By the next or fourth paragraph the testatrix provided:

''All of the rest, residue and remainder of my estate, of whatsoever kind and nature and wherever situate, I hereby give, devise and bequeath to ROY E. BOLSTAD and GLADYS E. BOLSTAD, of San Marino, California, to share and share alike, or to the survivor of them. I make this bequest in sincere appreciation of the many courtesies and kind attention extended me by ROY E. BOLSTAD and GLADYS E. BOLSTAD in the past.''

By the next paragraph Roy E. Bolstad was appointed executor of the will, or in case he could not act then his wife was appointed executrix, either to serve without bond.

These clauses constitute, in substance, the entire will of the testatrix.

Before attempting, directly, to interpret the will, a brief reference should be made to the applicable law on the subject. In 1943 this state, as to death taxes, adopted a proration statute. It is to be found in sections 970 through 977 of the Probate Code. Section 970 provides that estate taxes shall be prorated over the ''gross'' estate, that is the entire taxable estate, unless the testator ''otherwise directs in his will,'' or trust agreement.[1] The succeeding sections provide for the method of proration, for certain allowances and exemptions, that the taxes shall be paid by the executor or administrator, that the executor or administrator may recover his portion of the taxes from the possessor of nonprobate property subject to tax, and then section 977 contains certain definitions. They are worth quoting. The section provides:

---

[1]Section 970 reads as follows:

''Whenever it appears upon an accounting, or in any appropriate action or proceeding, that an executor, administrator, trustee or other fiduciary has paid an estate tax to the Federal Government under the provisions of any Federal estate tax law, now existing or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, and except in a case where by written instrument executed inter vivos direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such inter vivos instrument, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues.''

"Except where the context otherwise requires, as used in this article:

"(a) 'Person interested in the estate' means any person who receives or is the beneficiary of any property transferred pursuant to a transfer which is subject to a tax imposed by any Federal estate tax law, now existing or hereafter enacted.

"(b) 'Gross estate' or 'estate' means all property included for Federal estate tax purposes in determining the Federal estate tax pursuant to the Federal estate tax law."

Prior to 1943, in California, the federal estate tax was a charge solely upon the probate estate. It was not apportioned on the entire gross taxable estate. In the absence of a proration statute, this was the general rule in the various states. But many of the states, in the belief that every portion of the estate that created the tax should bear its fair share of the tax burden, passed proration statutes.[2] In 1943, California, modeling its statute on that of New York, as already pointed out, adopted sections 970-977 of the Probate Code.

As was stated in *Estate of Buckhantz, supra,* at page 98: "The object sought to be accomplished by the proration statutes is the equitable allocation of the burden of the tax among those actually affected by that burden. (*Security First Nat. Bank* v. *Wellslager,* 88 Cal.App.2d 210, 213 [198 P.2d 700]; *In re Chambers' Estate,* 54 N.Y.S.2d 88, 92; *In re Wahr's Estate,* 370 Pa. 382 [88 A.2d 417]; 47 C.J.S. 1016, § 776.)"

The same thought was expressed in *Estate of Cushing,* 113 Cal.App.2d 319, 333 [248 P.2d 482], as follows: "There can be no doubt that the proration statute definitely expresses a policy that the federal estate tax is intended, in the absence of an expression to the contrary, to be levied, for state inheritance tax purposes, in accordance with the benefit that a person interested receives from the estate. . . . In other words, the proration statute, in the absence of direction in the will to the contrary, expresses a general state policy directing the executor to pay the federal estate tax and to fix the impact of the tax upon each beneficiary's share of the property that has contributed to the tax."

Thus, subject only to the expressed will of the testator to the contrary, it is now part of the fundamental public policy of this state that taxes, in such cases, should be prorated.

---

[2] See list of such states, as of 1953, in *Estate of Buckhantz,* 120 Cal. App.2d 92 [260 P.2d 794], at page 97, footnote 2.

█ The basic question then is, did the testatrix, in paragraph second of her will, express the intent that all the death taxes should be imposed on the probate estate? There having been no extrinsic evidence on the issue, that question of interpretation is, of course, a question of law and not of fact.

█ For convenience that paragraph is again quoted:

"I direct my executor or executrix to pay out of my estate all my just debts, funeral expenses, expenses of administration, and all estate and inheritance taxes which may become due by my death, without limitation to property passing under my will."

Does this language direct that the taxes on the nonprobate estate be paid out of the probate estate within the meaning of section 970 of the Probate Code? We think not.

Three arguments are made in support of the position of the probate court. They are:

1. That the words "pay out of my estate" mean the probate estate;

2. That such conclusion is fortified because the testatrix has lumped together debts, funeral expenses and expenses of administration with death taxes, and that the first group of charges are payable out of the probate estate. Therefore, so it is argued, the death taxes must also be so paid;

3. That the words "without limitation to property passing under my will" should be interpreted as an indication that all of the death taxes should be paid out of the probate estate.

All three arguments are unsound.

█ In the first place, while the word "estate," when used generally, may be ambiguous, in that it could mean either the probate estate or taxable estate, here it is used in a will referring to death taxes, and this state has a proration statute which defines the term in relation to such taxes. That definition, already quoted, provides in part that the word "estate" as used in the proration statute means "all property included for Federal estate tax purposes in determining the Federal estate tax." Obviously, the assets of the trust, are part of "my estate" as thus defined. The will was executed on February 15, 1955, in California, while the testatrix was a resident of California. The trust and the probate properties were physically present in California. The testatrix must be presumed, of course, to have known the California law, including a knowledge of the definition of "estate" contained in the Probate Code. Thus, so far as the words "my estate" are concerned, far from being a direction that all death taxes be

paid out of the probate estate, standing alone, they more reasonably would amount to a direction to pay such taxes out of the entire taxable estate.

But the words "my estate" do not stand alone. They are immediately followed in the same sentence by a description of what shall be paid out of "my estate"—i.e., "debts, funeral expenses, expenses of administration, and all estate and inheritance taxes which may become due by my death." The first three expenses enumerated are, of course, payable out of the probate estate. It is urged that by lumping these expenses with "all estate and inheritance taxes" the testatrix has indicated and directed that the death taxes should also be paid out of the probate estate. This is a possible interpretation, but it is not the most reasonable one. While there are California cases interpreting the proration statutes,[3] none of them involves, precisely, the point here under discussion. There are, however, cases from other states involving the precise point. These cases are collected and commented on in two annotations, one in 15 American Law Reports 2d 1216 and the other in 37 American Law Reports 2d 7. As might be expected, the cases are not consistent. This is partly due to the fact that the precise language used by the respective testators differs. But running through the cases generally is the thought that apportionment of the taxes is the general rule to which exception is to be made only when there is a clear and unambiguous direction to the contrary. Ambiguities are to be resolved in favor of apportionment. (See *Matter of Mills,* 272 App.Div. 229 [70 N.Y.S.2d 746]; *Matter of Kalik,* 179 Misc. 872 [41 N.Y.S.2d 53]; *In re Merrill's Estate,* 67 N.Y.S. 2d 324.)

New York has applied this rule of construction to the precise problem here involved. In the case of *In re Fairchild's Will,* 15 Misc.2d 272 [178 N.Y.S.2d 886, 889], the will provided "Of all the rest, residue and remainder of my estate, real and personal, after payment of all my debts and of the expenses of my estate, including expenses of administration and all estate, transfer and inheritance taxes, I give . . ." etc. The court (p. 890) held that "In the absence of a clear expression of intention to extend the direction against apportionment to nontestamentary property, the court holds [under the above language] that apportionment is required by the statute." This is also the rule of construction in

---

[3]See *Estate of Moore,* 165 Cal.App.2d 455 [322 P.2d 108], and the cases referred to therein.

Rhode Island (*Union Trust Co.* v. *Watson,* 76 R.I. 223 [68 A.2d 916]) and Ohio (*Whitlow* v. *Thomas* (Ohio App.) 86 N.E.2d 622; *In re Carrington's Estate* (Ohio, P.Ct.) 136 N.E.2d 182).

Most of the cases cited by respondent contain language amounting to an express direction against apportionment.[4]

In view of these considerations, it cannot be held that the words involved amounted to an express direction against proration. They are, at most, ambiguous, and under the pertinent rule of construction, the ambiguity must be resolved in favor of apportionment.

■ Once the preceding words are interpreted in favor of apportionment the words ''without limitation to property passing under my will'' are of little importance in ascertaining the testatrix' intent as to apportionment. Obviously if the words preceding this clause be interpreted to require apportionment then such apportionment is to be accomplished ''without limitation to property passing under my will''— i.e., such apportionment is not limited to property passing under the will.

There is another factor to be considered. The contrary interpretation would defeat the testatrix' basic intent. ■ Fundamentally, of course, the purpose of all interpretation of wills is to ascertain the intent of the testator, and to give effect to that ascertained intent if not contrary to law (*Estate of Major,* 89 Cal.App. 238, 241 [264 P. 542]). ■ To ascertain such intent the will must, of course, be read as a whole. The will under consideration is very short, consisting of but five paragraphs. The only legatees named

---

[4]Thus in *Bankers Trust Co.* v. *Hess* (N.J.) 63 A.2d 712 the will directed that all estate taxes upon any property included in the ''gross estate'' and ''whether or not passing hereunder'' be paid out of the ''general estate''; in *In re Berman,* 39 N.J.Super. 95 [139 A.2d 138] the will directed that all estate taxes ''in respect of my property and estate disposed of by me whether under this my Will or any other conveyance made by me'' shall be paid out of the residuary estate. But there are many New Jersey cases in which the language is not so precise, and where proration was ordered (*Palmer* v. *Palmer,* 135 N.J.Eq. 516 [39 A.2d 438]; *Phraner* v. *Stone,* 137 N.J.Eq. 284 [44 A.2d 504]; *Hackensack Trust Co.* v. *Ackerman,* 138 N.J. Eq. 244 [47 A.2d 832]).

Respondent also cites the Ohio case of *Central Trust Co. of Cincinnati* v. *Lamb,* 74 Ohio App. 299 [58 N.E.2d 785], where the decedent expressly directed that death taxes not be levied ''against the shares of the principal or income of any beneficiary of my estate.''

While there is language in that case that supports respondent, there are Ohio cases *contra.* (See *Whitlow* v. *Thomas, supra,* 86 N.E.2d 622; *In re Gatch's Estate,* (Ohio App.) 92 N.E.2d 398; *In re Carrington's Estate, supra,* (Ohio, P.Ct.) 136 N.E.2d 182.)

in the will are the Bolstads. Thus, the sole purpose of executing the will was to make the bequest to the Bolstads. This intent was made crystal clear by paragraph third of the will wherein the testatrix stated that she had intentionally excluded her nieces because of the trust, and by paragraph fourth, the sole paragraph in the will containing a bequest, which leaves the entire estate to the Bolstads "in sincere appreciation of the many courtesies and kind attention extended me" by them. Certainly, it must be presumed that the testatrix intended something to pass under the will to the Bolstads. ▮▮▮ But if respondents' contention were upheld the will would be totally ineffective. Nothing would pass under it. That is so because the death taxes on the probate and nonprobate estates exceed the value of the probate estate. Thus, if respondents' views were to prevail, the entire probate estate would be consumed in the payment of taxes. Thus, the fundamental and obvious purpose of the will—to benefit the Bolstads—would be defeated. This factor, that the death taxes would exceed the value of the probate estate, has on occasion been held to be of importance in determining that the testator's intention was to have the taxes apportioned (*Morristown Trust Co.* v. *Childs,* 128 N.J.Eq. 524 [17 A.2d 559] ; *In re Rogers' Will,* 249 App.Div. 238 [291 N.Y.S. 815] ).

For these reasons, it is our opinion that inasmuch as the will, properly interpreted, does not direct that the taxes be paid contrary to the provisions of the proration statute, the terms of that statute must prevail.

The portions of the decree appealed from are reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., White, J., and Dooling, J., concurred.

The petition of respondent Wells Fargo Bank American Trust Company for a rehearing was denied December 13, 1961.