[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1903 
OPINION
Unless either the decedent or federal law otherwise directs, both federal and California estate tax "shall be equitably prorated among the persons interested in the estate" in the manner prescribed in Probate Code sections 20110 through 20117. (Prob. Code, § 20110) We are called upon to review the construction and application of Probate Code section 20113, which states that "[i]f a trust is created, or other provision made whereby a person is given an interest in the income of, an estate for years or for life in, or other temporary interest in, any property, the estate tax on both the temporary interest and on the remainder thereafter shall be charged against and paid out of the corpus of the property without apportionment between remainders and temporary estates."
By a will which contained no specific direction for proration of estate taxes, a decedent gave a life estate in a house to a 68-year-old friend and permitted the remainder to fall, with other assets, into an estate residue to be *Page 1904 
held in trust for certain of her relatives. It was the decedent's apparent intention that her friend should live in the house for the rest of his life and that the house should thereafter "remain in the family." There is no applicable federal exception to the California proration statute. The narrow question we must answer, as a matter of law on essentially undisputed facts, is whether in these circumstances the impact of the estate tax allocable to the house should fall (as the life tenant contends and the probate court has ordered) on liquid assets in the residue of the estate or (as the trustee asserts) on the house itself even if this result can be achieved only by selling the house.
We shall conclude that the trustee's position is validated by the plain language of Probate Code section 20113, which as applied here requires that the estate taxes on both the life estate and the remainder be paid out of the house itself. In the circumstances the probate court is empowered to order the house sold in order to pay the share of estate taxes allocable to it, and the court should exercise that power if the parties are unable to reach some other settlement of the matter between themselves.
The decedent, Renee A. Malpas, died in 1989 leaving neither a spouse nor issue. Her friend and executor Abram Sandage filed an inventory of estate assets appraised at slightly more than $1,150,000, including a house worth $625,000 as well as cash and securities. By her will the decedent made specific gifts to several people and organizations, including $100,000 to her grandniece, Diane d'Albert Klier. She gave to "my friend Abram Sandage an exclusive lifetime estate, for the rest of his life, in my house. . . ." She gave "all of the rest, residue, and remainder" of her estate to Klier, in trust, for the benefit of Klier's two sons, directing among other things that the trustee, "[s]ubject to the foregoing life estate interests, maintain the house . . . for the use and benefit of [the sons], and convey absolute title to them, or to the survivor of them, upon the death of . . . Klier, it being my wish that said property remain in the family."
Sandage filed federal and California estate tax returns and paid, from estate funds, estate taxes in an amount agreed by the parties to be $186,079. In his final account Sandage proposed a proration which in relevant effect would charge all estate taxes allocable to the house to the residue to be distributed to Klier in trust; Sandage expressly stated that none of the estate tax should be prorated to him because he would be taking a "life estate only."
Over Klier's objections the probate court agreed with Sandage, approved his proration, settled his account, and ordered distribution of the estate as *Page 1905 
Sandage had proposed. Klier appeals from the order settling Sandage's account (Prob. Code, § 7240, subd. (j)), challenging only the probate court's disposition of estate taxes allocable to the house.
Sandage regards the probate court's order as fair to him inasmuch as he had cared for the decedent in her home for more than 10 years; in his view the ability to live in the house for the rest of his life was his reward. He suggests that Klier's cash gift and the residue (after estate taxes) that she was to receive in trust for her children were, similarly, fair to her. He reminds us that the lower court's order is to be presumed correct, and asserts that Klier has not cited authority sufficient to rebut the presumption. (1a) More specifically Sandage argues:
(1) That the probate court's order complied with Probate Code section 20113, "without apportionment between remainders and temporary estates," by charging the allocable estate taxes to the "corpus" of "the estate itself"; and
(2) That the order was consistent, and Klier's position is inconsistent, with the decedent's clear intent that Sandage should have the use of the house during his lifetime, inasmuch as the decedent's intent would be frustrated were it necessary to sell the house to pay the allocable estate taxes.
Sandage's second point suggests an argument which, if valid, would avoid the proration statute altogether. The argument would be that the decedent's will should be construed to contain a specific direction that the estate tax on the house be paid from the residue. Unquestionably the decedent could have included such a direction in her will, and the direction would have rendered the proration statute inapplicable. (Prob. Code, § 20110, subd. (b)(1).)
On its face the will does not mention taxes at all. But it is here that the decedent's apparent intent that the house not be sold — that Sandage should be allowed to live in it for the rest of his life, and that it should thereafter "remain in the family" — might arguably come into play, by way of the axiom that "`[a] will must be construed according to the testator's intention and his [or her] intention must be given effect to the extent possible.'" (Hoover v. Hartman (1982) 136 Cal.App.3d 1019, 1026 [186 Cal.Rptr. 669]; Estate of Stokley (1980)108 Cal.App.3d 461, 467 [166 Cal.Rptr. 587].) Sandage would argue:
(1) That absent some alternative provision by the testator Probate Code section 20113 would require that the estate tax allocable to the house be paid from the house itself;
(2) That as a practical matter the tax could be paid from the house itself only by selling the house; *Page 1906 
(3) That sale of the house would frustrate the decedent's intent; and therefore
(4) That to give effect to the decedent's intent the will must be construed to contain an alternative provision for payment of the tax.
Perhaps because he is unwilling to concede the premise that Probate Code section 20113 would require payment of allocable estate taxes from the house itself, Sandage does not make this precise argument.
(2) In any event we would find the argument unpersuasive, primarily because of California's "strong policy in favor of statutory apportionment" (Hoover v. Hartman, supra,
136 Cal.App.3d at p. 1026): California has long recognized that "apportionment of [estate] taxes [under the proration statute] is the general rule to which exception is to be made only when there is a clear and unambiguous direction to the contrary. Ambiguities are to be resolved in favor of apportionment." (Estate ofArmstrong (1961) 56 Cal.2d 796, 802 [17 Cal.Rptr. 138,366 P.2d 490]; cf. Estate of Stokley, supra, 108 Cal.App.3d 461, 468;Estate of Hendricks (1970) 11 Cal.App.3d 204, 208 [89 Cal.Rptr. 748] ; Estate of Cummings (1968) 263 Cal.App.2d 661, 669 [69 Cal.Rptr. 792].) Until 1987 the basic statute (then § 970 of the Prob. Code) made an exception to statutory proration "where a testator otherwise directs in his or her will" (cf. Stats. 1984, ch. 1711, § 1, p. 6206); effective in 1987, apparently to restate the law including its judicial gloss (cf. Recommendation Relating to Proration of Estate Taxes (1986) 18 Cal. Law Revision Com. Rep., pp. 1127, 1136), the Legislature rewrote the exception to apply only where "the decedent in a written . . . instrument . . . specifically directs" a particular method of payment or proration. (Stats. 1986, ch. 783, § 25, p. 2620, enacting Prob. Code, § 20110, italics added.) Effective in 1991 the new language was reenacted without change. (Stats. 1990, ch. 79, § 14; cf. Recommendation Proposing New Probate Code (1990) 20 Cal. Law Revision Com. Rep. p. 1967.)
We are aware that at least one other Court of Appeals has concluded in a divided opinion, solely on the basis of a determination that proration would frustrate the testator's donative intent, that a gift otherwise subject to a prorated charge for estate taxes under the statute should not be so charged. (Estate of Steele (1980) 113 Cal.App.3d 106, 117-120 [169 Cal.Rptr. 635]; cf. id. at pp. 120-121, dis. opn. of Gardner, P.J.) We decline to reach such a conclusion in this case for three reasons.
(1b) First, it appears to us that the narrow but firmly based policy now expressly stated in the proration statute must, where applicable, take precedence over the more general policy of construction, "to the extent possible," *Page 1907 
to effectuate a testator's intent. (Cf. Estate of Neider (1966)243 Cal.App.2d 102, 107-108 [52 Cal.Rptr. 47].)
Second, in the circumstances of record in this case a holding that the will may be construed to include the necessary specific direction would arguably amount to judicial legislation. The statutory language is clear. The situation in which a testator seeks to give a life estate, and to provide for a remainder, in an illiquid asset such as a house, and in which an intention that the assets pass in kind may readily be inferred, is by no means uncommon. Further to infer, absent specific direction, that in such a situation any allocable estate tax is to be deemed directed to fall on the residue (in order to protect the illiquid asset from sale) would be virtually to declare a broadly applicable judicial exception to a clear legislative rule. This would be beyond our judicial function. If a special exception is to be made for illiquid assets, the Legislature must make it.
Third, unlike the holographic codicil in Steele the will before us was prepared by an attorney who may be assumed to have been aware of, and who could readily have incorporated a specific provision to avoid, the proration statute. The absence of such a provision may in these circumstances be regarded as the basis for a rational inference that the testator did not intend to include such a provision.
Sandage's remaining argument is that Probate Code section 20113
directs, in the circumstance of a life estate and remainder in a specific asset, that the impact of the allocable estate tax fall on the liquid residue of the estate as a whole. He citesEstate of Setrakian (1959) 169 Cal.App.2d 795 [338 P.2d 247], but we find no support for his conclusion there. (3) In our view section 20113 quite clearly directs that in this circumstance the allocable estate tax is to be paid from the specific asset itself. Sandage's argument to the contrary appears to us to be borne of a misperception of section 20113's role in the proration statute.
We begin from the basic legislative statement that (if no exception applies) "any estate tax shall be equitably prorated among the persons interested in the estate in the manner prescribed in this article," of which Probate Code section 20113
is a part. (Prob. Code, § 20110) "The object sought to be accomplished by the proration statutes is the equitable allocation of the burden of the tax among those actually affected by that burden. [Citations.]" (Estate of Buckhantz (1953)120 Cal.App.2d 92, 98-99 [260 P.2d 794]; cf. Estate of Setrakian,supra, 169 Cal.App.2d at p. 801 [the proration provisions are "founded on equity"]; 2 Cal. Will Drafting (Cont.Ed.Bar 3d ed. 1992) § 26.3, pp. 26-4-26-5.) Relevant to the equities of the situation before us, it *Page 1908 
has been said that "[t]he proration statute was designed to prevent the consumption of the residue by taxes where the testator made specific bequests to others." (Estate ofMcLaughlin (1966) 243 Cal.App.2d 516, 520 [52 Cal.Rptr. 543].)
Sandage suggests that Probate Code section 20113 is anexception to the concept of equitable proration; we are satisfied that it is, instead, a legislative attempt to achieve equity in the special situation of successive interests in a specific asset. (4) Of course, life estates and remainders are recognized interests in property (Civ. Code, § 761 et seq.; cf. generally 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, §§ 231-232, 244 et seq., 334 et seq., pp. 434-435, 449 et seq., 533 et seq.), and it is firmly established that for various purposes (including death taxation) life estates and remainder interests in any given asset may be separately valued at any point in time, on the basis of life expectancy and an assumed rate of return on investment, and that the sum of their values will equal the value of the asset at that time. (Cf. e.g., U.S. Treas. Regs. § 20.2031-7.) Perhaps the Legislature might have chosen to prorate estate taxes on successive estates on the basis of current evaluation of the interests. But it has been suggested, in the context of life estates and with respect to a closely similar provision of California's former inheritance tax law, that "`[o]bviously there is no certainty that the life tenant will live out his [her] allotted span or that he [she] will not exceed his [her] life expectancy, or, for that matter, that the remainderman will live to take even though the remainder be vested. This uncertainty is the reason for holding the corpus liable for the tax rather than the transferees.'" (Estate ofKolda (1982) 133 Cal.App.3d 283, 287, fn. 1 [184 Cal.Rptr. 49], quoting from Cal. Estate Administration (Cont.Ed.Bar 1959) § 17.49, p. 471.) This insight is sound, and we consider it applicable to section 20113: In essence the Legislature has determined not that successive interests are to be exempt
from proration but rather that the most equitable approach to proration is to direct the allocable tax to the asset itself and to permit the impact of the payment to adjust itself, as between the holders of the successive interests, over time.
The easy example, of course, is a trust in a sum of money, with direction to the trustee to pay income to A for life and to terminate the trust and transfer the corpus to B upon A's death. Were there estate tax allocable to the trust at its inception, Probate Code section 20113 would require that the tax be paid from the sum of money which was the trust corpus, and the impact of the payment would be manifested in reduced income payments during the life of A and in a reduced payout to B upon A's death. Thus, without reference to necessarily hypothetical evaluation tables, the allocable estate tax would in fact be prorated between A and B, over time, by the simple mechanism of taking the tax directly from the asset in the first place. *Page 1909 
If the asset is illiquid practical problems arise, but the theory is the same: The life tenant's right to use the asset is of obvious value, an important parameter of which will be the length of the tenant's life. By the same token the remainder interest has a value, which will be the difference between the present value of the asset and the value of the life tenant's right to use the asset for the rest of his or her life. As with liquid assets, the value of the life estate and of the remainder at any point in time can only be approximated by means of actuarial tables (such as those incorporated in the federal estate tax regulations) based in part on the life tenant's life expectancy. Because the Legislature has seen fit to adopt a single proration rule for successive interests in either liquid or illiquid assets, the rule must be taken to reflect a legislative judgment that, as to either kind of asset, it is more equitable to take the tax from the asset, and to permit the actual proration to work itself out in all the circumstances, than to rely on actuarial tables or to release any one or more of the successive interests altogether from the impact of the tax.
(1c) It is reasonable to anticipate that in most instances the nature of the asset, or the practical self-interest of the parties aided by available evaluation tools, will permit mutually satisfactory solutions to the difficulties posed by Probate Code section 20113 in particular cases. But if the asset is indeed illiquid, and if the parties and the probate court can find no alternative solution, the asset may have to be sold to effect the payment of allocable estate tax required by section 20113 The Probate Code permits (Prob. Code, § 10000, subd. (a)), and in specified circumstances empowers the probate court to order (id. § 10001, subd. (a)(1)), sale of estate property by the personal representative in order to pay taxes.
In the circumstances before us the probate court could not, over Klier's objection, properly have released the house from estate taxes altogether. We shall remand the matter for a new order which requires that estate taxes allocable to the house be paid from the house. Should sale of the house be necessary, we consider it appropriate that the balance of sale proceeds (after payment or reimbursement of the allocable estate taxes) be divided between the life tenant and the trust on the basis of the values of their respective interests (calculated under the federal estate tax regulations or equivalent actuarial tables)at the time of sale, to take account of the fact that Sandage has had the use of the house since the date of the decedent's death.
The order settling the final account of executor Abram Sandage is reversed. The matter is remanded with directions to the probate court, after a hearing or other appropriate proceedings on notice to all parties, to file a new order based on a proration of estate taxes which includes a requirement that any estate taxes allocable to the house be paid, or reimbursed to the *Page 1910 
estate, from the house itself. Unless the method of payment or reimbursement is otherwise resolved, by agreement among the parties or otherwise, the probate court shall order the executor, upon such terms as the court may fix, to sell the house, to pay or reimburse the estate taxes allocable to the house from the proceeds of sale, and to divide any remaining proceeds of sale between the life tenant and the holder of the remainder in proportion to the values of their respective interests at the time of sale. Each party shall bear his or her own costs on appeal.
Cottle, Acting P.J., and Stone, J.,* concurred.
* Judge of the Santa Clara Superior Court sitting under assignment by the Chairperson of the Judicial Council. *Page 1911