[No. B099003. Second Dist., Div. One. June 27, 1997.]

Estate of MARGARET C. WATHEN, Deceased.
WARNER STURTEVANT, as Trustee, etc., Petitioner and Respondent, v.
GREATER LOS ANGELES ZOO ASSOCIATION, Objector and
Appellant.

**COUNSEL**

O'Melveny & Myers, David D. Watts, Diane E. Pritchard and Carol A. Johnston for Objector and Appellant.

Randall D. Fowler, Howard S. Klein, Moffitt, Weagant & Loo, Lance M. Weagant and John Loo for Petitioner and Respondent.

OPINION

**VOGEL (Miriam A.), J.**—We hold in this case that where, as here, a decedent's will attempts to specify the manner in which death taxes are to be allocated but does so in an ambiguous manner, extrinsic evidence is admissible to clarify the decedent's intent. We also hold that a direction in a will, as construed with the aid of extrinsic evidence, that all death taxes are to be paid by the residuary estate created by a living trust executed at the same time as the will and as part of an integrated testamentary plan satisfies the requirements of subdivision (b)(1) of section 20110 of the Probate Code[1] and qualifies as a specific direction by the decedent that all estate taxes are to be satisfied as directed and not prorated as provided in subdivision (a) of section 20110.

FACTS

On August 19, 1988, Margaret C. Wathen executed an integrated testamentary plan comprised of two documents, a will and a living trust. In her will, Wathen (divorced and with no issue) left her entire estate to the trustee of her living trust, with directions to distribute it according to the terms of the trust. Among other things, the will provides that if the trust should fail for any reason, its terms are to be incorporated into the will, her estate given to the trustee named in the trust, and distribution made as provided in the trust. On the subject of taxes, the will provides as follows: "I direct that all estate or other death taxes that may by reason of my death be attributable to my probate estate or any portion of it, or to any property or transfers of property outside of my probate estate, without administration, *shall be charged to and paid out of the . . . Trust, as provided therein, without adjustment among the residuary beneficiaries, and shall not be collected from any beneficiary of my probate estate, or from any transferee or beneficiary of any property outside of my probate estate.*" (Italics added.)

The trust document covers the disposition of Wathen's $9.4 million estate following her death, with bequests to more than two dozen individuals (a few of $500,000, most of $10,000, and token gifts to her household staff) and divides the residue of her estate among 22 charities, but not equally. The Greater Los Angeles Zoo Association (GLAZA) received 25 percent of the residue, with only one charity receiving more (50 percent) and the remaining 20 each receiving between 1 and 6 percent. The only thing in the trust

---

[1]Unless otherwise stated, all section references are to the Probate Code.

document about taxes is a provision permitting the trustee to pay federal and estate taxes out of the trust estate.[2]

Following Wathen's death in 1994, her trustee petitioned the court for instructions concerning the allocation of estate taxes, asking for permission to distribute all specific bequests undiminished by death taxes and to pay all taxes from the residuary estate. GLAZA (and only GLAZA) objected, contending that taxes should be prorated among all of the beneficiaries in relation to the amount of each gift. The probate court rejected GLAZA's objection and instructed the trustee to pay all death taxes from the residuary estate. GLAZA appeals.

DISCUSSION

I.

GLAZA contends the will's tax allocation clause is fatally ambiguous and that extrinsic evidence cannot be considered to clarify Wathen's intent. Although we believe the tax allocation clause demonstrates Wathen's intent to avoid the results of statutory proration, we agree with GLAZA that, standing alone, the tax allocation clause is not a model of clarity. But we reject GLAZA'S contention that extrinsic evidence is inadmissible to clarify Wathen's intent.

A.

Under section 20110, estate taxes "shall be equitably prorated" except to "the extent the decedent in a written inter vivos or testamentary instrument . . . specifically directs" the manner in which the taxes are to be allocated. (§ 20110, subds. (a), (b).)[3] Thus, unless the decedent has provided otherwise, taxes are prorated "in the proportion that the value of the property received

---

[2]There were subsequent amendments to the will and the trust, none of which have anything to do with the issue before us on this appeal.

[3]In its entirety, section 20110 provides as follows:

"(a)   Except as provided in subdivision (b), any estate tax shall be equitably prorated among the persons interested in the estate in the manner prescribed in this article.

"(b)   This section does not apply:

"(1)   To the extent the decedent in a written inter vivos or testamentary instrument disposing of property specifically directs that the property be applied to the satisfaction of an estate tax or that an estate tax be prorated to the property in the manner provided in the instrument. As used in this paragraph, an 'instrument disposing of property' includes an instrument that creates an interest in property or an amendment to an instrument that disposes of property or creates an interest in property.

"(2)   Where federal law directs otherwise. If federal law directs the manner of proration of the federal estate tax, the California estate tax shall be prorated in the same manner."

by each person interested in the estate bears to the total value of all property received by all persons interested in the estate . . . ." (§ 20111.)

In *Estate of Armstrong* (1961) 56 Cal.2d 796, 800, 802 [17 Cal.Rptr. 138, 366 P.2d 490], our Supreme Court held that, absent a "clear and unambiguous direction" by the decedent of an intention to the contrary, the proration statute applies so that the tax burden is equitably allocated among those who are benefited. We agree with GLAZA that Wathen's direction is not as clear as it ought to be. In one figurative breath, Wathen managed to direct that all death taxes were to be paid "without adjustment among the residuary beneficiaries" and without "collect[ion] from any beneficiary" of her probate or trust estates. Although we think that Wathen meant that taxes should be paid from the residuary estate without adjustment of the *percentages* left to the residuary beneficiaries (cf. *Estate of McAuliffe* (1955) 132 Cal.App.2d 476 [282 P.2d 541]), it is GLAZA's view that "without adjustment among the residuary beneficiaries" means "without deduction" of taxes from the residuary estate. Since Wathen has also said that taxes are to be paid without collection from any beneficiary named in her will or her trust, adoption of GLAZA's interpretation leaves a direction that no death taxes are to be paid by the estate or by any beneficiary named in the trust or the will. However attractive that result might be to the beneficiaries, we suspect the Internal Revenue Service would not be amused. In short, there is an ambiguity.[4]

B.

GLAZA contends the mere existence of an ambiguity resolves the issue in its favor because (according to GLAZA) extrinsic evidence is inadmissible to clarify Wathen's intent. We disagree.

No extrinsic evidence was offered in *Estate of Armstrong, supra,* 56 Cal.2d 796, and the Supreme Court thus did not consider whether, had it been offered, it would have been admissible to clarify a provision insufficiently

---

[4]When the proration statute applies, a bequest to an exempt charity is not reduced by estate taxes and the charity's pro rata share is charged to the noncharitable beneficiaries (although the overall total estate tax is lowered). (Int.Rev. Code, § 2055(a); *Estate of Brunetti,* 56 T.C.M. (CCH) 580, 582 (1988).) According to GLAZA's figures, proration in this case would reduce the specific bequests to the individuals (all expressed in specific dollar amounts) by about $990,000 and increase the residuary bequests to the charities (all expressed in percentages) by about $2.2. million. As construed by the trial court, however, all taxes are to be paid from Wathen's residuary estate, thereby reducing the amount to be divided among all of the charities and, of course, substantially reducing GLAZA's 25 percent interest. The specific bequests would be in the dollar amounts provided by Wathen, without any reduction for taxes. For the reasons explained below, the trial court's decision will be affirmed. For whatever it is worth, we note our complete agreement with the trial court's interpretation of Wathen's intent.

clear to be treated as an express direction against proration (*id.* at pp. 801, 803)—but subsequent cases have resolved this issue against GLAZA. Where, as here, there is provision addressing proration but it is insufficiently clear to override section 20110, extrinsic evidence *is* admissible to construe the decedent's intent. (*Hoover* v. *Hartman* (1982) 136 Cal.App.3d 1019, 1025-1027 [186 Cal.Rptr. 669].) It is only where the testamentary document fails altogether to refer to the allocation of taxes that extrinsic evidence is inadmissible, apparently on the theory that silence cannot create an ambiguity. (*Estate of Hendricks* (1970) 11 Cal.App.3d 204, 206-207 [89 Cal.Rptr. 748].) Accordingly, GLAZA's reliance on *Estate of Hendricks* is misplaced.[5]

It follows that the trial court properly considered the extrinsic evidence presented to construe Wathen's ambiguous attempt to avoid proration. Since GLAZA has limited its attack to the *admissibility* of extrinsic evidence and has not questioned the *sufficiency* of the extrinsic evidence that was admitted or suggested that such evidence supports any conclusion other than the one reached by the trial court—that Wathen's clear and unambiguous intent was to avoid proration and to have all death taxes paid out of the residuary estate created by her trust—it also follows that the trial court's decision on this point must be affirmed. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]; *Interinsurance Exchange* v. *Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126].) Accordingly, we hold that the will, as construed, includes a sufficiently clear and unambiguous direction to avoid proration and to have all death taxes paid by the trust's residuary beneficiaries. (*Estate of Lindner* (1978) 85 Cal.App.3d 219, 223 [149 Cal.Rptr. 331] [no specific language is required so long as the decedent clearly expresses her intention not to prorate taxes].)

## II.

GLAZA also contends that, assuming its sufficiency, the provision in the *will* cannot compensate for Wathen's failure to provide in the *trust document* for the manner in which death taxes were to be allocated, and that we must consider the trust as though the will did not exist. We disagree. Undisputed evidence shows that Wathen's will was executed the same day as her trust, as part of the same integrated testamentary plan intended to accomplish the same purpose. Accordingly, both documents must be considered to determine whether the decedent has expressed a clear direction against statutory proration, and it is sufficient if the direction is contained in

---

[5]Although *Estate of Hendricks* can be read to state a more expansive limitation, that construction was rejected in *Hoover* v. *Hartman, supra,* 136 Cal.App.3d at pages 1026-1027. We agree with *Hoover* (and, apparently, so does the Supreme Court—a petition for review was denied). (*Id.* at p. 1030.)

one document but not the other. (*Hoover* v. *Hartman, supra,* 136 Cal.App.3d at pp. 1027-1028.)

We reject GLAZA's contention that the Fourth District's 1982 decision in *Hoover* was implicitly overruled by the Legislature's 1987 enactment of section 20110. (Stats. 1986, ch. 783, § 25, p. 2620.) As the Sixth District explained in *Estate of Malpas* (1992) 7 Cal.App.4th 1901, 1906 [9 Cal.Rptr.2d 806], former section 970 (the statute at issue in *Hoover*) provided a similar exemption to proration where the testator otherwise directed in her will, and the 1987 adoption of section 20110 simply restated existing law, "including its judicial gloss" that, to overcome the statutory presumption of proration, the decedent must "specifically direct[]" the method of allocation. (*Estate of Malpas, supra,* 7 Cal.App.4th at p. 1906.)

We also reject GLAZA's contention that Wathen's will must be ignored because the will does not dispose of any property. GLAZA is mistaken. The will quite clearly disposes of Wathen's entire estate by giving it all to the trustee of her trust, and also by providing that if the trust had failed for any reason, its terms were to be incorporated into the will and distribution made as provided in the trust. By any rational interpretation, the will was "a testamentary instrument disposing of property" within the meaning of section 20110. Had the trust failed, or had Wathen neglected to transfer any assets to her living trust (and she did neglect to transfer a modest IRA account), the will provided for the disposition of the nontransferred assets. No more is required by section 20110.

## DISPOSITION

The order is affirmed.

Spencer, P. J., and Masterson, J., concurred.