[No. D026249. Fourth Dist., Div. One. Sept. 11, 1997.]

VERNA MAE SIMPSON, as Trustee, etc., Plaintiff and Respondent, v. SALLY ANN WHITE, Defendant and Appellant.

## COUNSEL

Richard T. Hilmen, Jr., for Defendant and Appellant.

Lindley, Lazar & Scales, Elise S. Rogerson, R. Gordon Huckins and Luke R. Corbett for Plainttiff and Respondent.

## OPINION

**HALLER, Acting P. J.**—The executor of the estate of Harold T. Simpson[1] used estate assets to pay more than $250,000 interest on delinquent estate taxes. The sole issue on appeal is the proper source of funding for this interest payment. Harold's surviving wife, Verna Mae Simpson, contends, and the trial court agreed, the interest should have been paid from the corpus of Harold's residuary estate. Harold's daughter from a former marriage, Sally Ann White, contends the interest should have been paid from income earned on estate assets during the probate period. Viewing the terms of Harold's will and the applicable statutes (Prob. Code,[2] § 20100 et seq.), we conclude the court properly held the interest on delinquent taxes should be paid from the corpus of the residuary estate. Verna, as the income beneficiary of the testamentary trust funded by that corpus, was therefore entitled to the income from the assets earned during probate without reduction for the payment of delinquent tax interest. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Harold died on November 1, 1987, leaving an estate of approximately $6.3 million. He was survived by Verna, Sally, and several grandchildren.

---

[1] To avoid confusion, we will refer to Harold Simpson and the other members of his family by their first names.

[2] All further statutory references are to the Probate Code.

Harold's will appointed his friend, Emory Hogan, executor of his estate. Harold gave (1) his community property interest in his personal property to Verna; (2) his shares of stock in a nursery business to his grandchild and her husband; and (3) the "rest, residue, and remainder of [his] estate" to Hogan, as trustee of a trust. The will's seventh paragraph directed the trustee to pay to Verna the net income of the trust assets during her lifetime and, upon Verna's death, the trust assets and income would be shared by Sally and Harold's grandchildren. The will's 11th paragraph set forth Harold's intent that "death taxes, duties, charges or assessments . . . shall be paid by [the] Executor without proration of any charge . . . against any person who receives such property . . . ."

Hogan filed state and federal estate tax returns showing the estate did not owe any taxes. This would have been correct if Hogan had made an election under the Internal Revenue Code to qualify the trust for the federal estate tax marital deduction (QTIP). Hogan, however, failed to make the QTIP election on the tax return. As a result, substantial federal and state estate taxes were in fact past due and had been accumulating interest.

After an audit, the IRS determined the estate owed $1,938,890 in federal taxes and $427,551 in state taxes. Hogan could not immediately satisfy this tax obligation because the estate consisted primarily of real property and other nonliquid assets. To assist the estate in paying the taxes, Verna sold some of her community property and made interest-free loans to the estate. In 1990, the estate paid approximately $2.5 million in state and federal estate tax, penalties, and interest. The estate later obtained a refund of approximately $341,000. The record is not clear as to the amount of the tax payments attributable to interest, but the parties agree the amount was at least $250,000.[3]

The court entered the final judgment distributing Harold's estate in August 1992. On that date, the court distributed the residuary estate to the testamentary trust.

Hogan served as trustee of the trust for a brief period, but then resigned for health reasons. Under the provisions of the will, Verna succeeded Hogan as trustee.

In July 1995, Verna filed her first accounting and report as trustee. In the accounting, Verna noted she had never received the net income from the

---

[3]Although the record shows the trust's accountant requested a breakdown of interest and penalties from the taxing authorities, there is no information the accountant had received this information.

trust assets earned during the probate period.[4] Verna attached a series of computations showing $295,694.66 was the amount of the undistributed net income that accrued from trust assets during the probate period. Verna asked the court to authorize paying herself the $295,694.66 plus approximately $72,000 representing interest on her one-half community interest.

Although Sally did not dispute that an income beneficiary is entitled to income earned on assets during the probate period (see §§ 16304, subd. (a), 16305, subd. (a), 12006), Sally objected to the claim on the ground it was barred by laches and by the final order settling the probate estate account. After Verna filed an opposition memorandum, Sally did not reassert these arguments and instead raised a new objection—Verna was not entitled to the income earned during probate because that income should have been used to pay for the interest on the delinquent federal and state taxes. In support of this argument, Sally submitted declarations of Attorney William P. Shannahan and accountant Robert W. Jassoy. Shannahan offered legal opinions as to the proper source of payment for the interest paid on the delinquent taxes. Jassoy asserted opinions on accounting issues not in dispute on this appeal.

Verna countered that Harold's will and California's tax proration statutes require the charging of interest on estate taxes against the corpus of the residuary estate and not against income. Verna relied on the terms of the will and did not proffer any extrinsic evidence of Harold's intent.

The court ultimately agreed with Verna, ruling that Verna was "authorized to pay herself $368,073.41 undistributed net income which accrued during the probate of the estate . . . ." The court reasoned that the will's 11th paragraph expressed Harold's intent that interest paid on the delinquent taxes was "properly chargeable to the corpus of the trust," rather than to the income earned during probate. Sally appeals.

## DISCUSSION

Sally contends the court erred in determining Verna was entitled to reimbursement from the trust for income earned on trust assets during probate. As she did below, Sally maintains that Verna is not entitled to be reimbursed for this amount because that income should have been used to

---

[4]We refer to the income sought by Verna as trust income, even though this income was earned during probate and before the trust was funded through the decree of final distribution. As a practical matter, the distinction between income from the estate residue and income from trust assets during the probate period is not significant here because under the pertinent statutes the estate residue became the trust assets upon Harold's death and a trust income beneficiary is entitled to the income earned on assets during the administration of the estate. (See §§ 16304, 16305.)

pay the *interest* on the delinquent estate taxes. Thus, the sole issue before us is whether the executor was required to pay the delinquent tax interest from the residuary estate corpus or from income earned on the corpus during probate.

■ The Legislature has enacted specific rules for determining the source of payment for estate taxes, interest and penalties. (See § 20100 et seq.) These provisions seek to accomplish " 'the equitable allocation of the burden of the tax among those actually affected by that burden.' " (*Estate of Malpas* (1992) 7 Cal.App.4th 1901, 1907 [9 Cal.Rptr.2d 806].) This state has a " 'strong policy' " favoring the statutory apportionment rules. (*Id.* at p. 1906)

The general rule, set forth in sections 20110 and 20111, is that the burden of estate taxes should be borne by each beneficiary to the extent the beneficiary's share of the property has contributed to the tax.[5] (*Estate of Malpas*, *supra*, 7 Cal.App.4th at p. 1907; *Estate of Silveira* (1983) 149 Cal.App.3d 604, 607 [197 Cal.Rptr. 121].) This general rule " 'was designed to prevent the consumption of the residue by taxes where the testator made specific bequests to others.' " (*Estate of Malpas*, *supra*, 7 Cal.App.4th at p. 1908, quoting *Estate of McLaughlin* (1966) 243 Cal.App.2d 516, 520 [52 Cal.Rptr. 543].)

■ Section 20113 creates an exception to this rule applicable where a decedent has created a temporary and remainder interest in the same property.[6] (See also § 16312, subd. (d)(5).) **(3)** Under section 20113, the estate taxes must be paid from the corpus of the property without allocation between temporary and remainder interests. The rationale underlying this code section is that ". . . the most *equitable* approach to proration is to direct the allocable tax to the asset itself and to permit the impact of the payment to adjust itself, as between the holders of the successive interests, over time." (*Estate of Malpas*, *supra*, 7 Cal.App.4th at p. 1908, original italics; see Pennell, Estate Planning 1990 (UCLA Law School & Cont.Ed.Bar 1990) § 4.40, p. 174 ["this rule . . . is sensible, given the fact that reduction of corpus for the payment of taxes correspondingly reduces income to be earned thereon and effectively amortizes the tax allocable to the income interest"].)

---

[5]Section 20110 states in relevant part: "any estate tax shall be equitably prorated among the persons interested in the estate in the manner prescribed in this article." Section 20111 states, "[t]he proration required by this article shall be made in the proportion that the value of the property received by each person interested in the estate bears to the total value of all property received by all persons interested in the estate, subject to the provisions of this article."

[6]Section 20113 states, "If a trust is created, or other provision made whereby a person is given an interest in the income of, an estate for years or for life in, or other temporary interest in, any property, the estate tax on both the temporary interest and on the remainder thereafter shall be charged against and paid out of the corpus of the property without apportionment between remainders and temporary estates."

■ Section 20113 expressly applies only to the payment of "estate taxes." However, the Legislature defined *"estate tax"* to *"include[] interest and penalties on any deficiency."* (§ 20100, subd. (a), italics added.) Thus, the section 20113 proration rule governing payment of taxes on temporary/remainder interests applies to interest payments on delinquent taxes as well as the tax payment itself.

We are aware that another code section, section 20112, subdivision (c), directs that "interest on extension of taxes and interest and penalties on any deficiency shall be charged to equitably reflect the benefits and burdens of the extension or deficiency . . . ." Sally, however, has never relied on this code section to support her position that Verna is not entitled to be reimbursed. Moreover, on our review of the entire statutory proration scheme, this code section does not render section 20113 inapplicable to this case. As reflected in the Law Revision Commission comment to section 20111, the principle that adjustments for interest and penalties may be made on an equitable basis is merely an application of the general rule that taxes are generally to be equitably apportioned among beneficiaries on a pro rata basis. (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (1991 ed.) foll. § 20111, p. 276.) Nothing in section 20112, subdivision (c) supports a rule that the more specific provision applicable to temporary shares in property would be inapplicable here.

Accordingly, under section 20113, the interest on the delinquent estate taxes on Harold's estate was required to be paid from the corpus rather than from income. The probate court therefore properly held Verna was entitled to be reimbursed for the income earned during probate, since that income need not have been used to pay taxes or interest.

■ Sally attempts to avoid this result by arguing (1) section 20113 is inapplicable because of the will's 11th paragraph, and (2) this court should apply common law as developed in several New York cases reflecting prior New York law. We reject these arguments.

In asserting that section 20113 is inapplicable, Sally relies on section 20110, which provides the statutory proration rules "[do] not apply . . . [¶] . . . [t]o the extent the decedent . . . specifically directs that the property be applied to the satisfaction of an estate tax or that an estate tax be prorated to the property in the manner provided in the instrument." (§ 20110, subd. (b)(1).)

The will's 11th paragraph states: "All estate, inheritance, succession or other death taxes, duties, charges or assessments, imposed upon or in

relation to any property by reason of my death, whether passing under this Will or otherwise, shall be paid by my Executor without proration of any charge therefor against any person who receives such property under the terms of this Will, or otherwise."

■ Because there was no extrinsic evidence presented, we must make our own independent interpretation of this paragraph's meaning. (See *Burch* v. *George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Wakefield* (1968) 258 Cal.App.2d 274, 279 [65 Cal.Rptr. 664].) In doing so, we determine the testator's intention from the language of the will itself. (*Estate of Simoncini* (1991) 229 Cal.App.3d 881, 888-889 [280 Cal.Rptr. 393].) We give the words used by the testator their ordinary meaning unless it is clear the testator intended to use the words in a technical or extraordinary sense. (*Id.* at p. 889.) Further, because of the " 'strong policy in favor of statutory apportionment,' " a testator's intention is to control only when that intention is " 'clear and unambiguous.' " (*Estate of Malpas, supra,* 7 Cal.App.4th at p. 1906.) Ambiguities are to be resolved in favor of statutory apportionment. (*Ibid.*)

■ Harold made clear his intent that the general statutory proration rule (taxes and interest borne by each beneficiary) should not apply. Harold stated that his executor should pay "[d]eath taxes, duties, charges, or assessments" from his estate without charging "any person" who receives property under the will. As both parties acknowledge, "death taxes, duties, charges, and assessments" include interest on delinquent federal and state taxes. Thus, Harold intended that—contrary to the statutory general rule—any estate tax and related interest payments should be paid by his executor from the residuary rather than from the specific bequests.

This conclusion, however, does not mean Harold intended the statutory proration rule applicable to temporary/remainder interests would not apply. Although Harold made clear he did not want the taxes and interest to come from his specific bequests, he did not specify whether the taxes and interest should come from the corpus of his residuary estate, which became the trust corpus, or from income earned on the residuary estate corpus during probate, which became the trust income. As Sally concedes, the "will is silent as to whether [estate] taxes are payable out of corpus, or income, or both . . . ."

The fact that Harold's will contained an apportionment provision does not mean *all* of the statutory provisions are per se invalid. Rather, a will controls only to the extent it directs a rule contrary to the statutory mandate. (§ 20110, subd. (b)(1).) Harold never set forth an apportionment rule contrary to the rule set forth in section 20113. Thus, section 20113 remains applicable.

Our conclusion that section 20113 is applicable renders it unnecessary to address Sally's argument that we should apply former New York law to determine that the interest payment should have been paid from trust income. Since the New York cases relied upon by Sally do not interpret the applicable statutory provisions or construe testamentary language similar to here, we do not find them helpful.

### DISPOSITION

Order affirmed.

McDonald, J., and Sharp, J.,* concurred.

---

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.